Morrow v. Dows.

William F. Morrow, collector, appellant,

and

David Dows, trustee, and others, respondents.

1. Sections 33 and 34 of the tax laws of 1846 (*Nix. Dig.* 942) are not repealed by the first section of the act of 1854, (*Nix. Dig.* 947,) requiring the assessment of lands to be made in the name of the owner. The owner will be returned as delinquent, and upon the tax warrant issued against the owner, the tenant's goods can be seized and sold as a strangers' goods on demised premises were at common law taken on a distress for rent against the tenant.

2. Under a sale of lands for the payment of taxes, the estate only which the owner had at the time of the assessment passes. The estate acquired by a mortgagee prior to the assessment, is not affected by such sale.

3. The legislature has power to make taxes a lien paramount to all rights which the citizen may acquire in lands, and mortgages or liens taken after the enactment of such laws, would be postponed to the payment of the public revenues. Such intention to postpone mortgages is clearly indicated in section 34 of the act of 1846, (*Nix. Dig.* 942,) with respect to timber, which must necessarily be sold as an entirety. Its severance and an absolute title in the vendee must have been contemplated by the statute.

The opinion of the vice-chancellor is reported in 12 *C. E. Gr.* 442.

*Mr. Pitney*, for appellant.

*Mr. Emery*, for respondents.

Note.—*It seems*, that even where there is no statutory provision, taxes levied upon lands take priority over every other lien or encumbrance. *Butler* v. *Bailey*, 2 *Bay* 244; *Dunlap* v. *Gallatin Co.*, 15 *Ill.* 7; see, for instances under statutory provisions, *Parker's Appeal*, 8 *W. & S.* 449; *Gledney* v. *Deavors*, 8 *Geo.* 479.

A mortgagor in possession must pay the taxes assessed on the lands. *Fuller* v. *Hodgdon*, 25 *Me.* 243; see *Harvie* v. *Banks*, 1 *Rand.* 408.

Where the mortgagee is a non-resident, the mortgagor is not entitled to an allowance for such taxes, in taking an account of the amount

Morrow v. Dows.

Van Syckel, J.

On the 28th of March, 1876, the chancellor made a decree directing a sale of the mortgaged premises for the payment of a mortgage made by Daniel Drew to David Dows, bearing date October 28, 1873, and duly recorded January 7, 1874. The tax levied on the mortgaged premises for the year 1875 not having been paid, a warrant was issued under the thirty-fourth section of the act concerning taxes, (*Nix. Dig.* 942,) commanding the collector of the township in which the mortgaged premises are situate, to sell the standing timber thereon for the payment of the tax. From an order made on the petition of the complainant in the foreclosure suit restraining such sale, this appeal was taken by the collector. It is admitted that the mortgaged premises are inadequate to satisfy the mortgage debt.

Two questions are presented by this appeal : 1. Whether sections 33 and 34 of the tax law of 1846 (*Nix. Dig.* 942) were repealed by the first section of the act of 1854 (*Nix. Dig.* 947) requiring the assessment to be made against the owner. 2. Whether the rights of the mortgagee are paramount to the right of the collector to sell the wood and timber.

The act of 1854 directs that all lands shall be assessed in the name of the owner, and therefore, if it is essential to the

---

due on the mortgage. *Dolman* v. *Cook,* 1 *McCart.* 56 ; *Stonington Bank* v. *Davis, Id.* 286. Nor can they be assessed to a mortgagee who is not in possession, and has never entered to foreclose. *Coombs* v. *Warren,* 34 *Me.* 89 ; *Davenport* v. *M. & M. R. R. Co.,* 12 *Ia.* 539. *Aliter,* where he is in possession. *Moore* v. *Titman,* 44 *Ill.* 367.

A mortgagee may pay the tax, and the sum so paid may be included in the amount due on his mortgage. *Stonington Bank* v. *Davis,* 1 *McCart.* 286 ; *Eagle Ins. Co.* v. *Pell,* 2 *Edw. Ch.* 631 ; *Brown* v. *Simons,* 44 *N. H.* 475 ; *Williams* v. *Hilton,* 35 *Me.* 547 ; *Faure* v. *Winans, Hopk. Ch.* 283 ; *Mix* v. *Hotchkiss,* 14 *Conn.* 32. But not taxes illegally assessed, and the payment of which he might have resisted. *Atwater* v. *West,* 1 *Stew.* 366.

A tax sale cuts off all other estates or interests in the land, as a homestead right or dower, *Robbins* v. *Barron,* 32 *Mich.* 36 ; and a rent charge, *Turner* v. *Smith,* 14 *Wall.* 553 ; and a title claimed by adverse possession, *Brown* v. *Austin,* 41 *Vt.* 262 ; and lands in which the state has a contingent mortgage interest, *Biscoe* v. *Coulter,* 18 *Ark.* 423 ; and a mortgage on a non-resident's land, *Fager* v. *Campbell,* 5 *Watts* 287 ; see *Kelso* v. *Kelly,* 14 *Pa. St.* 204 ; *Smith* v. *Lewis,* 20 *Wis.* 369.—Rep.

exercise of the right to sell the timber that the lands shall be assessed in the name of the tenant, sections 33 and 34 of the act of 1846 are rendered nugatory and inoperative by the act of 1854.

The language of the thirty-third section is that the tenant, or other person in possession or having the care of any lands, shall be liable for the payment of taxes imposed on such lands, and if such tenant or other person shall pay it, or his goods shall be sold for it, he may deduct the same from his rent or recover it from his landlord.

It is insisted that by this section the tenant was made personally liable primarily for the tax, and that unless the assessment is made in his name, the demand required by the eleventh section of the act could not be made, and that no warrant could issue by virtue of which his goods could be appropriated to liquidate the tax. The tax is imposed upon the land, and the liability to pay it is primarily upon the owner.

The words " If any such tenant shall pay, or his goods shall be sold for such tax, he shall deduct it from his rent or recover it from his landlord," clearly implies it is to be imposed upon the tenant only in the event of default on the part of the landlord to pay. The tenant is made to occupy the position of surety for the owner, and his goods are subjected to levy and sale, not for his own tax, but for the tax of his landlord. The foundation of the tenant's liability to pay the tax is his tenancy of the lands, and not the assessment against him personally. There is nothing in the act of 1846 which requires the lands to be assessed in the tenant's name; they might be taxed in the owner's name, and the owner returned as delinquent, and upon the tax warrant issued against the owner, the tenant's goods be seized and sold as a stranger's goods on demised premises were, at common law, taken on a distress for rent against the tenant.

The tenant suffered no hardship, he was presumed to have in his own hands full indemnity, and ample provision was made for his protection. In accepting the relation of tenant,

he voluntarily assumed the statutory responsibility, and could be prepared to meet it. The thirty-fourth section provides, that if the tax which shall be laid on any unimproved or untenanted land be not paid, or if tenanted by any person or persons (not the proprietor) who are unable to pay his or her tax, it shall be the duty of the township collector to make return thereof to a justice of the peace of the county, who shall issue a warrant commanding him to levy such tax by distress and sale of so much of the timber, wood and herbage or other vendible property of the owner, and on the premises, as will be sufficient to pay the same.

The singular pronoun " his " or " her," refers to " proprietor," and not to the plural " person or persons;" the true reading is, " if tenanted by any person or persons who are unable to pay the proprietor's tax as aforesaid," which shows that the tax referred to in section 33 is regarded as the owner's tax, for which the tenant is merely surety.

Provision is made for every case but that of improved lands occupied by the owner in person; in this case the legislature, no doubt, supposed that the owner of land would be in possession of ample personal property out of which to make the tax. The same procedure is given for selling wood and herbage on tenanted and untenanted lands. In the latter case the assessment must necessarily have been in the owner's name.

If the consequences which would flow from the repeal of these sections are considered, it will be apparent that the legislature could not have intended that result to follow from the enactment of the subsequent statute.

Until the act of 1854 was passed taxes were not a lien upon lands. That act provides that taxes shall be a lien only in cases of persons residing out of the state, or foreign corporations residing out of the county in which the lands lie.

In all cases where the owner of lands resided in this state, but out of the county, whether the lands were tenanted or untenanted, the act of 1854 furnished no means whatever of collecting the tax; the owner residing out of the county

could not be proceeded against; the tenant could not be held for it, and there was no authority for selling the lands until the passage of the act of 1863. It cannot be reasonably supposed that the legislature intended to sweep away the entire machinery for collecting so considerable a portion of the public revenue. A repeal by implication, which would work such mischief, will not be favored. There is no such necessary conflict between these statutes as will affect the force of the two sections of the earlier law, and therefore the question remains whether, as against the mortgagee, the timber can be seized to satisfy the tax?

Liens are of purely statutory origin; without a statute there can be no lien, and unless taxes are declared by positive law to be a lien upon the lands against which they are assessed, no such effect can be claimed for them. *Dillon,* § 659, and cases cited; *Cooley on Taxation,* 305; *Philadelphia* v. *Greble,* 38 *Pa. St.* 339.

While, in the absence of any legislation on the subject, it must be conceded that a tax is not a lien, either upon personal or real property, it is an essential attribute of government that power should inhere in the legislature to make the taxes, without which it cannot be maintained and supported, liens on property paramount to all rights which may be acquired by the citizen. The right to establish this preference necessarily results from the right to take by uniform laws of taxation, all such property as may be requisite to the execution of its functions. Mortgages or liens taken by the individual, after the enactment of such laws, would unquestionably be subject to be postponed to the payment of the public revenues.

In *Dale* v. *McEvers,* 2 *Cow.* 118, this priority was maintained, where the New York statute made the assessment a lien overreaching all other encumbrances. In *Parker* v. *Baxter,* 2 *Gray* 185, the court found that the legislature had expressed a purpose to give the tax priority over the mortgage; and although I might be unwilling to construe like legislation in the way in which it was there interpreted, yet,

admitting such construction to be correct, the tax necessarily had precedence, and the judgment in that case supports the doctrine that legislative action is essential to postpone the encumbrance. The mere declaration by the law-maker that taxes shall be a lien upon the land assessed, does not of itself manifest a purpose to affect every estate which may be held in such lands, because lands are divisible into many estates, either of which may be sold without impairing the other. The legislative will to that end must be clearly manifested to give such a law any operation beyond the estate of him upon whom the assessment is cast.

Is there anything in our tax laws which, by expression or by necessary implication, makes the lien of a tax override all rights which have been acquired under the mortgagor prior to its assessment?

Under the act of 1854 the lands of non-residents only could be sold for non-payment of taxes; there was no indication in that act of any intention to establish the general policy of selling the estate of a mortgagee for the default of a mortgagor. Prior to that time, in 1851, the act had been passed authorizing the taxation of mortgages, so that the estate of the mortgagor only in the land was assessed. (*P. L.* 1851, p. 273).

By the sixth section of the act of 1854, the purchaser at the tax sale holds the lands during the term for which he purchases against the owner or owners thereof, and against all persons claiming under him, until said term is fully ended. He is not to hold it absolutely against everybody until his term is fully ended. If such had been the intention of the draftsman, different language would have been used. Giving it the widest meaning of which it is susceptible, manifestly such sale would not, where the owner in possession of the estate for life or for years was taxed, affect the remainder-man or reversioner who did not claim under him. Nor would it embrace a mortgage executed by the prior owner of the fee. Every interest and every estate was not, therefore, operated upon by the lien. The words of the

sixth section were clearly intended as a limitation, narrowing the estate which passes by the tax sale. It would be an inconvenient and unreasonable rule to make some mortgages subject to the sale and to exclude others. The legislature undoubtedly could have done so, but such intention should not be imputed to it, until language is used more apt to express such a purpose.

It cannot, therefore, be held that under this act the land itself as an entirety, and that the absolute fee regardless of all individual rights in it, shall pass by a tax sale. Some estates are manifestly exempted from the tax lien. The reasonable construction of the statute is, that the purchaser shall take the estate of the owner, and all persons claiming under him after the assessment is made. His estate alone in the premises being assessed, and the default being in the payment of the burden which should fall on that, the object of the provision was to prevent the mortgagor from defeating or embarrassing the sale by conveying or encumbering subsequent to the assessment.

The effect of the seventh section is to authorize a sale of the estate which the owner has, notwithstanding any mistake in the owner's name, when the assessment is made. It simply provides for the contingency of an omission or mistake, in which event the same estate is to be sold as that specified in the prior section.

The act of March 25th, 1863, (*P. L.* 1863, p. 497,) which extended the lien for taxes to all lands assessed, as well of residents as non-residents, expressly provided the right of redemption to the mortgagor only. The legislature having declared its intention to relieve the mortgagor, who is in default, from the consequences of his own laches, it would be unjust to impute to it, in the absence of clear language to that effect, the purpose of authorizing the estate of a mortgagee to be sold from him, without notice to him, for the tax due from another, and without any right of redemption. The innocent party would thus be left remediless, while the one chargeable with neglect is provided for. I

think the true and reasonable interpretation of the acts of 1854 and 1863 is, that where real estate is mortgaged, the equity of redemption is to be sold under the tax warrant—such estate only as the owner has therein at the time the assessment is made.

In the case of *Hopper* v. *Ex'rs of Malleson*, 1 *C. E. Gr.* 382, Chancellor Green holds that under a special act applying to the city of Paterson, in language almost identical with the existing general law, the word "owner" signifies the owner of an estate in possession at the time of the assessment, and that his estate alone can be sold for the tax.

But while it may be clear that the legislature did not intend to affect the estate of a mortgagee by a sale of the land mortgaged for the default of the mortgagor, a different intent with regard to timber, I think, is clearly manifested by the thirty-fourth section of the act of 1846, subsequent and subject to which the complainant's mortgage was taken.

At the time of the passage of that act the policy of taxing mortgages had not been adopted in this state. The entire value of the lands was assessed to the owner, and in case the tax was not paid, the thirty-fourth section authorized a sale of the timber, wood, herbage, or other vendible property of the owner. The operation of the act upon the sale was to sever the timber from the land, and pass an absolute title to the purchaser. No distinction is made between the timber and the wood and herbage or other vendible property of the owner. If the timber was sold, it would necessarily be taken by the purchaser from the premises, otherwise it would be useless to sell it. In fact, the thirty-seventh section of the act of 1846 expressly authorizes the purchaser to enter upon the premises at any time within two months after the day of sale and take away the timber. The timber is not susceptible of division as to its title; it must necessarily be sold as an entirety. The sale being ordered under the same terms as herbage and other vendible property, its severance and an absolute title in the vendee must have been contemplated by the statute.

The legislature commanded that the timber be sold, without any reservation of the rights of others; such sale would unavoidably detach the timber from the estate, and to that extent impair the security of a mortgage upon it; but the mortgage being taken while such law was existing, the mortgagee must bear the loss which ensues.

In cases where the timber constitutes the principal value of the land, it might be greatly sacrificed by a sale made without notice to the mortgagee, but such loss may fall upon any one whose property is subjected to a judicial sale, and the fact that it may reasonably be apprehended cannot defeat the legislative intent when it has been pronounced.

Under the view here taken, the order restraining the collector from selling the timber was unauthorized, and should be reversed, with costs in this court and in the court below.

Order unanimously reversed.