The legal question raised by this motion is whether or not the lien given by the statute creating the Unemployment Compensation Commission (chapter 270, P.L. 1936) has priority over a mortgage executed before the statute was enacted. The question arises from the following circumstances:
The bill is to foreclose a mortgage given by the defendant John Prothero to complainant on October 13th, 1936, covering real property in Monmouth county, and the State of New Jersey is joined as defendant. The bill alleges that the state obtained a judgment against Prothero on March 21st, 1938, in the sum of $758.04 on a claim based on an alleged indebtedness from Prothero to Unemployment Compensation Commission. The commission filed a certificate in the office of the clerk of the supreme court which had the force and effect of a judgment under the statute. (Section 14e.) The statute became effective December 22d 1936, approximately two and a half months after the execution and recording of the mortgage.
The bill of complaint charged that any interest which the state has in the mortgaged premises is subject to the lien of complainant's mortgage. Issue was joined on that charge by the answer filed by the Unemployment Compensation Commission and the complainant has moved to strike the answer on the ground that it does not set forth a legal defense.
Section 14b of the Unemployment Compensation act reads as follows:
"Tax a debt and lien; proceedings to recover; preference. The contributions, penalties, and interest due from any employer under the provisions of this act, from the time they shall be due, shall be a personal debt of the employer to the State of New Jersey, recoverable in any court of competent jurisdiction in an action at law in the name of the State of New Jersey. Such debt, whether sued upon or not, shall be a lien on all the property of the debtor except as against an innocent purchaser for value in the usual course of business and without notice thereof, and shall have preference in any distribution of the assets of the employer, whether in bankruptcy, insolvency or otherwise." *Page 195 
It is the settled law of this state that the legislature has the power to declare by statute enacted after the execution of a mortgage that a tax levied on the mortgaged land shall be a lien prior to the mortgage; but it has been unanimously held that such priority will not be afforded to the lien of the tax unless, from the language of the statute itself, it is clearly evident that the legislature so intended. Dows v. Drew, 27 N.J. Eq. 442;reversed, 28 N.J. Eq. 459, but the principal of law stated was affirmed in the following language (at p. 464):
"The mere declaration by the lawmaker that taxes shall be a lien upon the land assessed, does not of itself manifest a purpose to affect every estate which may be held in such lands, because lands are divisible into many estates, either of which may be sold without impairing the other. The legislative will to that end must be clearly manifested to give such a law any operation beyond the estate of him upon whom the assessment is cast."
See, also, Trustees, c., of Public Schools v. City ofTrenton, 30 N.J. Eq. 667; City of Paterson v. O'Neill, 32 N.J. Eq. 386;Howell v. Essex County Road Board, Ibid. 672;Lydecker v. Palisade Land Co., 33 N.J. Eq. 415; Hudson Trustand Savings Institution v. Carr-Curran Paper Mills Co., 58 N.J. Eq. 59;Shaler v. McAleese, 73 N.J. Eq. 536.
In Howell v. Essex County Road Board, supra, Vice-Chancellor Van Fleet said (at p. 674):
"The power of taxation is an attribute of sovereignty, to which all persons and property belonging to the body politic are subject. Unless restrained by constitutional provision, it is unlimited, and may be exercised according to the will of that branch of the government to which it is delegated. In the absence of constitutional limitation, it is as absolute and as free from restraint so long as it is used for purposes of taxation, and not for confiscation, as the will of a despot, and there is no security against its abuse, except that the legislature which authorizes the tax is responsible to the constituency which must pay it. In the exercise of this power, it is competent for the lawmaker not only to make taxes, *Page 196 
assessed on land liens thereon, but to give the tax lien precedence over all prior rights and estates therein. Cooley onTaxation 305."
And further (at p. 675), he said:
"The power of the legislature to declare, by a law enacted after the rights of a mortgagee are fully vested, that a tax levied by virtue of such law, on the lands mortgaged, shall be a lien on the mortgaged premises prior to that of the mortgage, must be considered unquestionable."
He went on to say, however, that a mere declaration that taxes shall be a lien upon the land assessed does not of itself show an intention that the tax lien shall occupy the paramount position. But all of the cases hold that the tax lien created by the statute will not be given precedence over prior mortgages unless such a legislative purpose is clearly manifested by the terms of the act.
An examination of the Unemployment Compensation act does not disclose any legislative intent to make the lien of the tax therein provided for paramount to a pre-existing mortgage or other encumbrance. It does not use language like that found in the statute under which municipal taxes are levied upon real estate. That statute provides that "every municipal lien shall be a first lien on such lands and paramount to any prior or subsequent alienation and descents of such lands or encumbrances thereon, except subsequent municipal liens." Nor does it provide for the redemption by mortgagees as was the fact in City ofPaterson v. O'Neill and Shaler v. McAleese, supra. On the contrary, it specifically provides that it shall not be a lien as against innocent purchasers for value, thus clearly manifesting an intention that the estate shall not have a lien where the property has been sold to an innocent purchaser in the ordinary course of business. The complainant mortgagee stands in the position of an innocent purchaser for value.
Moreover, the intent of the legislature is beclouded by the provision that the state shall have preference in any distribution of the assets of the employer in bankruptcy, insolvency or otherwise. Under section 67d of the Bankruptcy act, valid *Page 197 
liens are unaffected by the bankruptcy. Only the equity of the bankrupt passes to his trustee. There is no need to give the lienor a preference.
Preferences or priority payments to certain classes of creditors are provided by section 64b of the Bankruptcy act; and holders of liens are not included in any of those classes.
The United States district court in Re Howell King Co.,16 F. Supp. 984, recognized the distinction between priorities and liens, and construed the two sections of the statute above referred to. The court said (at p. 985):
"Section 64b of the Bankruptcy act (as amended,11 U.S.C.A. § 104b) provides for the order of payment of enumerated claims which are accorded priority out of the assets of a bankrupt estate and which are to be paid before dividends to common creditors. Section 64b has no reference whatever to valid lien debts, which by virtue of section 67d (11 U.S.C.A. § 107d) cannot be affected by the Bankruptcy act. Section 64b refers only to the distribution of the funds not subject to lien, among non-lien creditors, after the satisfaction of the valid liens referred to by section 67d. This construction of section 64b and section 67d of the Bankruptcy act is clearly enunciated by the adjudicated cases."
To the same effect is Matter of Dublin Veneer Co.,1 F. Supp. 313.
It is difficult to understand what the legislature meant by creating a lien and providing, in the same paragraph, for a preference to the state in the event of bankruptcy. A clearly stated intention that the state should have a lien paramount to all mortgages would make it unnecessary to speak of a preference. The lien would be established and bankruptcy could not affect it. There is no doubt that the state has a lien, but it is not paramount to prior mortgages.
I shall advise an order striking out the answer, but providing that the commission shall have the right to file a notice under the rule asking that its encumbrance be reported upon. *Page 198