RAY B. LUCAS, Superintendent of the Insurance Department of the State of Missouri, in charge of CENTRAL STATES LIFE INSURANCE COMPANY, a Corporation, ATLAS ENAMELING COMPANY, a Corporation, ALFRED FAIRBANK and EWING TAYLOR, Appellants, v. ANDREW J. MURPHY, SR., EDWARD C. CROW and HARRY P. DRISLER, as Commissioners of the UNEMPLOYMENT COMPENSATION COMMISSION OF MISSOURI.—156 S. W. (2d) 686.

Division Two, October 25, 1941.

Modified Opinion Filed December 16, 1941.

*Bryan, Williams, Cave & McPheeters* for appellants.

*Harry G. Waltner, Jr.,* Chief Counsel, and *Edward D. Summers,* Assistant Counsel, for respondents.

BARRETT, C.—This is a suit to quiet the title to a lot in the City of St. Louis and involves the application of parts of the Missouri Unemployment Compensation Law (Secs. 9421-9445, R. S. Mo. 1939, 7 Mo. Stat. Ann., p. 4770, amended, Laws Mo. 1941, pp. 566-643) to Section 5075, R. S. Mo. 1939, 3 Mo. Stat. Ann., p. 2039, Laws Mo. 1937, pp. 208-209, relating to taxes and fees owed by corporations to the State of Missouri and its political subdivisions.

On December 31, 1928, the Central States Life Insurance Company was the owner of a note and deed of trust on which there was then due approximately $350,000. They were given by Standard Stamping Company and duly recorded.

In 1935 Standard Stamping Company was reorganized under Section 77(b) of the National Bankruptcy Act by the United States District Court for the Eastern District of Missouri and thereafter was known as Standard Stamping Corporation. The reorganization plan provided that the deed of trust should be foreclosed and that the secured creditor should bid the full amount of its note for the property and if it became the successful bidder would convey the lot to the company and receive in return a new note and deed of trust on the lot and, in addition, a further note secured by a chattel mortgage on the company's personal property. The reorganization plan contemplated and provided for trustees, with a pledge of common stock, and a voting trust agreement under which representatives of Central States Life Insurance Company had the power to vote the stock. The plan regulated the salaries of the company officials and provided for the real estate taxes then due. In short it was such a scheme as is generally used in reorganizations under Section 77(b) of the bankruptcy act and was fully carried out.

The Central States Life Insurance Company was the successful bidder for the lot and conveyed it to Standard Stamping Corporation receiving, in return for the purchase price, a note in the sum of $341,774.99 secured by a deed of trust, dated July 26, 1935, which it recorded. In addition the life insurance company was given a note and chattel mortgage on the personal property of the company and the common stock was transferred to the three trustees, two of whom were directors of the life insurance company.

The Standard Stamping Corporation continued in business as reorganized until August 16, 1939, when the life insurance company foreclosed its mortgages and took possession of substantially all the assets and property of the company, including, of course, the lot in question.

During the years 1938 and 1939 Standard Stamping Corporation became indebted to the Missouri Unemployment Compensation Commission for the contributions imposed by that law in the sum of $4,660.76 and a judgment was rendered in favor of the commission for the amount due on November 24, 1939. Previously, September 19, 1939, the commission filed a notice of its lien for the sum due in the office of the recorder of deeds of St. Louis.

The appellant Atlas Enameling Company purchased a part of the lot, after the second foreclosure, from the life insurance company and gave its note and deed of trust with appellant Alfred Fairbank as trustee to secure the payment. The remainder of the lot was conveyed to appellant Ewing Taylor, an employee of the life insurance company. Ray B. Lucas, Superintendent of the Insurance Department of the State of Missouri, has been substituted for the insurance company.

The appellants instituted this suit, alleging that the notice of lien filed by the Unemployment Compensation Commission constituted a cloud on their titles and interests and asked to have the title quieted and the interests of the appellants and respondents declared. The trial court found that Standard Stamping Company was the owner of the lot in 1938 and 1939 and owed the contributions due the commission for those two years and that they constituted a lien on the land superior to any interest of the appellants. The trial court also found that by reason of the voting trust and the fact that two of the trustees were directors and employees of the life insurance company, as well as directors of Standard Stamping Corporation that they controlled the company, knew of the existence of the contributions and were, therefore, estopped to deny their superiority as a lien.

Sec. 5075, R. S. Mo. 1939, 3 Mo. Stat. Ann., p. 2040, was approved June 20, 1937 and became effective ninety days thereafter (Laws Mo. 1937, pp. 204-211). In so far as the statute is pertinent to this case it is as follows:

"*All taxes, or fees,* of every character and description, *due or owing to the state of Missouri, or any political subdivision thereof, by any* foreign or domestic *corporation,* association, or company *are hereby declared to constitute a prior lien and a preferred claim against the assets of such corporation,* association, or company, and *said lien shall not be lost on said assets by any transfer thereof.* The payment of all taxes which are due and owed by any corporation, . . . is hereby declared to be a condition precedent to the right . . . to sell, . . . or transfer the whole or major portion of its assets . . . without all taxes levied and assessed against same having been paid in full prior to the sale, . . . or transfer of such assets, is hereby declared to be null and void."

 The appellants' first assignment is that the trial court was in error when it held the "contributions" required by the Unemployment

1082

Compensation Law to be "taxes" or "fees" within the meaning of Section 5075, R. S. Mo. 1939, 3 Mo. Stat. Ann., p. 2040. The appellants' position is that the act creating the Commission defines "contributions" as "the money payments to the State Unemployment Compensation Fund required by this law" (Sec. 9423(f), R. S. Mo. 1939, 7 Mo. Stat. Ann., p. 4770) and that these contributions in specific amounts are due on account of wages paid to employees and go into "a special fund, separate and apart from all public moneys or funds of this state" (Sec. 9433, R. S. Mo. 1939, 7 Mo. Stat. Ann., p. 4770) and are deposited with the Secretary of the Treasury of the United States; that no appropriation by the Missouri General Assembly is required and that they do not constitute revenue or taxes.

Without setting forth the provisions of the law it is sufficient to say that it sets up a complete system for the payment of "contributions" by employers to the Unemployment Compensation fund based on wages paid employees as contemplated by the Social Security Acts of the State and Federal Government. [42 U. S. C. A., pp. 176-235, particularly 42 U. S. C. A., secs. 1101-1110, and Ch. 52, R. S. Mo. 1939, particularly Secs. 9421-9445, R. S. Mo. 1939, 7 Mo. Stat. Ann., p. 4770.] The Missouri law was enacted in 1937 (Laws Mo. 1937, pp. 574-603) and elaborately amended in 1941 (Laws Mo. 1941, pp. 566-643).

We are of the opinion that there can be so little doubt but that the "contributions" required fall within any definition of a "tax" that the matter does not call for any extended discussion. "Taxes are the enforced proportional contributions from persons and property, levied by the State by virtue of its sovereignty for the support of the government and for all public needs." [1 Cooley, Taxation, sec. 1, p. 61J] "As we see it, there is no escape from the conclusion that the Unemployment Compensation Act includes a taxing statute." [A. J. Meyer & Co. v. Unemployment Compensation Commission, 348 Mo. 147, 152 S. W. (2d) 184, 191; Murphy et al. v. Limpp, 347 Mo. 249, 147 S. W. (2d) 420; Murphy et al. v. Hurlbut Undertaking & Embalming Co., 346 Mo. 405, 142 S. W. (2d) 449; In re Lechtman Printing Co. (W. D. Mo.), 38 Fed. Supp. 1008; Carmichael v. Southern Coal & Coke Co., 301 U. S. 495, 57 Sup. Ct. 868, 81 L. Ed. 1245.]

 The next question presented by the parties to this appeal is whether or not the lien for taxes provided by Section 5075, R. S. Mo. 1939, 3 Mo. Stat. Ann., p. 2040, is a prior and superior lien to the appellant life insurance company's mortgage. We have held that it does create a lien. [Vincent Realty Co. v. Brown, 344 Mo. 438, 126 S. W. (2d) 1162.] The appellants argue that the statute is not subject to the construction that it creates a lien prior to the lien of an earlier recorded bona fide deed of trust, while the respondent says it is not subject to any other construction. This is all aside from any question of the constitutionality of any of the laws or acts here

involved because the appellants failed to preserve any such problems for our review.

It is our view that it is not necessary for us to decide the specific question of whether or not the statute, by its terms, creates a lien superior and prior to an earlier recorded deed of trust. We are of the opinion that the statute (Sec. 5075, R. S. Mo. 1939, 3 Mo. Stat. Ann., p. 2040, Laws Mo. 1937, pp. 208-209) is inapplicable to the appellants, and especially to the life insurance company's deed of trust, in the instant case, in any event.

As we have noted the note and deed of trust contemplated by the reorganization plan is dated July 26, 1935, and was duly recorded. The Unemployment Compensation Commission and its taxes came into existence in 1937 (Laws Mo. 1937, pp. 574-603) and the law decreeing taxes due or owing from corporations to be a lien came into existence in 1937 (Laws Mo. 1937, pp. 208-209). Whether the lien created by the act is a prior and superior lien to the lien of a previously recorded deed of trust or not it could have no application here because the law creating the lien was not in existence when the deed of trust was given and there is nothing in the act compelling its application retroactively.

It is not a question of whether or not the legislature may enact a law giving taxes priority over other liens and encumbrances, as has been done in some states with general taxes (Ann. Cas. 1913B, p. 520; 10 L. R. A. 478), personal property taxes (L. R. A. 1915D, p. 886; 47 A. L. R. 378; 65 A. L. R. 677), local assessments (35 L. R. A. 272), inheritance and succession taxes (26 A. L. R. 1461; 66 A. L. R. 404, 109 A. L. R. 858; 114 A. L. R. 518; 44 L. R. A. (N. S.) 419; 8 L. R. A. (N. S.) 1140, and even in the absence of statute (61 C. J., secs. 1176-1196, pp. 925-934), but whether or not it was done by this act.

True enough, in Missouri, even in the absence of statute, and whether rightly or wrongly we have adopted the view that the State's lien for real estate taxes takes precedence over and is superior to all other liens whether prior or subsequent. [Stafford v. Fizer, 82 Mo. 393; Gitchell v. Kreidler, 84 Mo. 472; Williams v. Hudson, 93 Mo. 524, 6 S. W. 261.] The same rule has been applied to special tax bills and that regardless of the nature of the mortgagee's interest in the land. [Missouri Real Estate & Loan Co. v. Gibson, 282 Mo. 75, 220 S. W. 675; Keating v. Craig et al., 73 Mo. 507; Jaicks v. Oppenheimer, 264 Mo. 693, 175 S. W. 972; Morey Engineering & Const. Co. v. St. L. Artificial Ice R. Co., 242 Mo. 241, 146 S. W. 1142, 40 L. R. A. (N. S.) 119.] So too to drainage district levies. [Little River Drainage Dist. v. Sheppard, 320 Mo. 341, 7 S. W. (2d) 1013.] But, it should be noted in all these cases that the law creating or providing for the tax or tax bill was in existence when the prior mortgage was executed and the mortgagee was, therefore, bound to take cognizance

of them. True the city passes a new law when it authorizes a tax bill but the city's right and power to so legislate and tax was already in existence when the mortgage debt was created. And, even in these cases in order that the mortgagee may be forever foreclosed he must have been made a party to the suit. Missouri Real Estate & Loan Co. v. Gibson, supra.

The statute says that taxes due the State from corporations "are hereby declared to constitute a prior lien and a preferred claim against the assets of such corporation" but such language, in and of itself, does not compel retroactive or retrospective construction. " 'Retroactive' or 'retrospective' laws are generally defined, from a legal viewpoint, as those which take away or impair vested rights acquired under existing laws, or create a new obligation, impose a new duty, or attach a new disability in respect to transactions or considerations already past." [2 Cooley, Taxation, sec. 513, p. 1144; 2 Lewis-Sutherland, Statutory Construction, sec. 641, p. 1157.] Regardless of the type of legislation under consideration, "In the construction of statutes the uniform rule is that they must be held to operate prospectively only, unless the intent is clearly expressed that they shall act retrospectively, or the language of the statutes admits of no other construction." [Jamison v. Zausch, 227 Mo. 406, 417, 126 S. W. 1023; 2 Cooley, Taxation, sec. 514, p. 1145; 2 Lewis-Sutherland, Statutory Construction, sec. 642, p. 1157; Const. Mo., Art. 2, Sec. 15.]

Even when statutes have expressly declared taxes a superior lien over other prior liens and encumbrances the courts, without more, have never applied the statutes to liens created before the law was passed. [Finn v. Haynes, 37 Mich. 63; Hulin v. Butte County, 18 S. D. 339, 100 N. W. 739; Maricopa County v. Equitable Life Assur. Soc. (Ariz.), 28 Pac. (2d) 821; In re Prince & Walter, 131 Fed. 546; Central Tr. Co. v. Third Ave. R. Co., 186 Fed. 291; Third Am. Bldg. & L. Assn. v. Prothero, 124 N. J. Eq. 193, 1 Atl. (2d) 20.] It is, therefore, our view that regardless of whether the lien created by the statute is superior to other liens, the statute cannot apply to the instant case because it was not in existence when the life insurance company's deed of trust was executed and there is nothing in the act itself indicating a legislative intent that it should so operate. [Murphy v. Limpp, 347 Mo. 249, 147 S. W. (2d) 420; State of Missouri v. Earhart, 111 Fed. (2d) 992; The State v. The St. L., K. C. & N. R. Co., 77 Mo. 202; State v. Gilmore, 342 Mo. 1232, 119 S. W. (2d) 805; In re Woestman's Estate (Mo.), 253 S. W. 773.]

 The respondents contend, as the trial court found, that since the life insurance company had control over the affairs of Standard Stamping Corporation at least during 1938 and 1939 and made no effort to cause the contributions to be paid that the appellants are now estopped to deny the validity of the State's lien. This argument is based on the fact that under the voting trust agreement provided for

in the reorganization plan two of the life insurance company's directors or officers became directors of the stamping company as well as the holders of its common stock. Without going into an extended discussion of the subject we are of the opinion that the situation in this case is not such as to call for a disregard of the corporate entities. [State ex rel. v. Public Service Commission, 335 Mo. 448, 73 S. W. (2d) 393.] The reorganization was carried out in a manner permitted by law and under the supervision of the United States District Court. The record shows that the whole scheme was submitted to and approved by that court. And, of course, the reorganization plan protected the life insurance company's indebtedness. And the trustees, who were also directors of the stamping company, were representing the holders of the deed of trust and, as everyone well knew, not other creditors. [Straus v. Tribout et al., 347 Mo. 149, 146 S. W. (2d) 617, In re Independent Automobile Forwarding Corp., 111 Fed. (2d) 537.] There was nothing in the record to show such control by the insurance company over the stamping company as to create an estoppel or call for the application of equitable maxims.

The judgment of the trial court is reversed, and the cause remanded for further proceedings not inconsistent with this opinion. *Westhues* and *Bohling, CC.,* concur.

PER CURIAM:—The foregoing opinion by BARRETT, C., is adopted as the opinion of the court. All the judges concur.