955 S.W.2d 935 (1997)
W.B. and T.B., as next friend for M.E.R., Appellants,
v.
M.G.R., Respondent.
No. 79835.
Supreme Court of Missouri, En Banc.
November 25, 1997.
*936 William B. Beedie, Farmington, for Appellants.
Kathy Wolz, John P. Heisserer, Cape Girardeau, for Respondent.
WHITE, Judge.
This appeal arises from an action seeking a determination that W.B. ("Appellant") not M.G.R. ("Respondent"), is the father of M.E.R. ("Daughter").[1] The circuit court dismissed the petition with prejudice on the ground that the suit was not timely brought under the Uniform Parentage Act, since it was initiated after the child's fifth birthday. Appellants contend that the statute, as currently constituted, provides a right of action and, alternatively, that barring this suit violates their constitutional rights. We find that Respondent had a vested right to be free from a challenge to his paternity on Daughter's fifth birthday, and that enforcing that right violates neither her rights nor those of Appellant. Accordingly, we affirm.
Respondent and T.B. ("Mother") were married in 1976 and she gave birth to three children, including Daughter, born June 15, 1984, before the marriage was dissolved on October 3, 1984. In the dissolution decree, the court found that the three children were born of the marriage, custody was awarded to Mother, and Respondent was ordered to pay child support. Mother and Respondent were remarried in 1985, and the second marriage was dissolved in 1992. Again, the dissolution decree found that the children were born of the marriage, awarded custody to Mother, and ordered Respondent to pay child support. Later that year, Mother married Appellant. In January 1993, the court modified the decree to award custody of the two older children to Respondent. Custody of Daughter stayed with Mother, and child support was terminated.

The Uniform Parentage Act
On February 17, 1993, Appellant filed a petition seeking to have himself declared Daughter's father under the Uniform Parentage Act.[2] Section 210.826 permits a man presumed to be a father under the act to bring an action to determine the existence or nonexistence of his parental relationship with a child.
A man is presumed to be the natural father of a child if:
(1) He and the child's natural mother are or have been married to each other and the child is born during the marriage ...; or

*937 . . . .
(4) He acknowledges his paternity of the child in an affidavit, which is also signed by the natural mother.... If another man is presumed under this section to be the child's father, acknowledgment may be accomplished only with the written consent of the presumed father or after the presumption has been rebutted....[3]
The trial court dismissed, and the court of appeals affirmed, holding that Appellant could not file an action under subdivision (4) until the nonexistence of the relationship presumed by subdivision (1) had been established.[4] The court of appeals specified that the dismissal should have been without prejudice, since the suit was premature.[5] Appellants then instituted the present action seeking to declare the nonexistence of a paternal relationship between Respondent and Daughter. The trial court again dismissed, this time with prejudice, apparently concluding that such a suit was time barred under prior law.
The question presented is whether appellants may maintain a suit to declare the nonexistence of a parent-child relationship between Respondent and Daughter. Prior to 1993, an action to establish the nonexistence of a paternal relationship presumed under the act could only be brought by the mother, the child, or the man presumed to be the father; such an action had to be commenced before the child's fifth birthday.[6] In 1993, when Daughter was nine years old, the legislature changed the act to remove the five year bar and to add as a possible plaintiff in such an action a man alleging himself to be the father of a child.[7]
Respondent argues that, once Daughter had reached her fifth birthday, his right to be free from a suit challenging his paternity became absolute, and that the subsequent enactment by the legislature could not divest him of that right. In Doe v. Roman Catholic Diocese of Jefferson City,[8] this Court held that a law reviving a cause of action for which the statute of limitations had expired was a retrospective law prohibited by article I, section 13 of Missouri's Constitution. "Retrospective laws are generally defined as laws which `take away or impair rights acquired under existing laws....'"[9] In this case, the relevant statute vested a right to be free from suit in Respondent, specifying that an action challenging his paternity must be "brought within a reasonable time ..., but in no event later than five years after the child's birth."[10] On June 15, 1989, Respondent acquired, under the law as it then existed, a vested right to be free from a suit to challenge his paternity of Daughter. Accordingly, the current version of section 210.826.1, as applied to Respondent, is unconstitutionally retroactive, and the trial court properly dismissed the action on that ground.

Appellant's Constitutional Claims
Because he was never given an opportunity to establish his paternity of Daughter under the UPA, Appellant argues that it violates his right to due process, equal protection, and access to the courts. Appellant's due process claim turns on the question of whether a biological father has a protectable liberty interest in the legal recognition of paternity. The United States Supreme Court examined this question extensively in Michael H. v. Gerald D.,[11] where the Court upheld a California law that presumed a child born during a marriage to be that of the husband, allowed only the husband and mother to challenge that presumption, and then only within two years of the child's birth. While the Court was sharply divided on whether biological paternity created any *938 protectable liberty interest, a majority of the justices found that it did not create a protectable interest in the legal status of fatherhood.[12] The Michael H. plurality explicitly holds that a man does not have any protectable interest in maintaining a paternal relationship with his biological child if the child is born into another's marriage.[13] Justice Stevens's concurrence leaves the door open for the possibility that such a biological relationship may create a liberty interest in something besides legal paternity, such as visitation.[14] Under either approach, Appellant's claim fails. Appellant, who is currently residing in the same household with Daughter, claims no interest, except a legal status matching their purported biological relationship, that is advanced by extinguishing Respondent's parental rights. Because it does not implicate a constitutionally protected liberty interest, the trial court's ruling does not deprive Appellant of due process.
Next, Appellant argues that his inability to maintain a suit rebutting the presumed paternity of Respondent violates equal protection principles. Appellant claims that he is denied equal protection because "a person in his status" is prohibited from instituting an action to declare the nonexistence of a paternal relationship between Daughter and Respondent. Appellant does not argue that this statutory scheme is one requiring strict scrutiny, instead claiming that the statute is not rationally related to a legitimate state interest. This argument fails; the State's interest here is clear. The statute is clearly designed to encourage the creation and maintenance of a relationship between a child and a father. Hence, where no such relationship exists, the act allows a putative father to claim paternity. In contrast, when another man has an existing paternal relationship with a child, the law seeks to protect it by only allowing it to be challenged for five years after the child's birth, and then only by members of the family that would be disrupted by its termination. This scheme supports the legitimate state interest of protecting paternal relationships and does not violate equal protection.
Finally, Appellant argues that the fact that he has never had the opportunity to demonstrate his paternity under the UPA violates his right to open courts guaranteed by the Missouri Constitution.[15] This claim fails for much the same reasons that his other contentions do. A man who impregnates a woman who is married to another has no inherent right to have that child legally treated as his own. Since there is no substantive right to such a determination, the fact that Appellant was barred by statute from maintaining such an action did not violate his right to be heard in court. No cause of action in favor of Appellant ever accrued under the UPA, and one is not created by the operation of the open courts provision, which "was not designed to create rights, but only to allow a person claiming those rights access to the courts when such a person has a legitimate claim recognized by the law."[16] During the period before Respondent's right to be from suit challenging his paternity vested, the fact that Appellant had no right to make such a challenge does not violate the open courts guarantee.

Daughter's Constitutional Claims
Daughter claims that the UPA's five year period to challenge Respondent's presumed paternity violates her right to open courts, due process and equal protection. Daughter first argues that application of the five-year limitations period to her suit is inconsistent with this Court's decision in Strahler v. St. Luke's Hosp.[17] In Strahler, this Court held that a two-year medical malpractice statute of limitations that was only *939 tolled until a plaintiff was twelve was unconstitutional. Apparently appellants read Strahler to hold that no statutory time bar may ever be employed against a minor. As the Strahler Court expressly noted, this reading is far too broad.[18] What Strahler prohibits are limitations periods that are arbitrary and unreasonable when applied to minor children.[19] In that case, the Court weighed the legislature's interest in battling the "economic and social costs connected with medical malpractice litigation" against minor plaintiffs' interest in maintaining personal injury actions.[20] The Court concluded that the method chosen by the legislature to meet its interest "extract[ed] far too high a price from minor plaintiffs" and that the "cure selected by the legislature would prove no less pernicious than the disease it was intended to remedy."[21] Here the balance of interests is far different. Daughter has offered no compelling interest in a legal declaration that Respondent is not her father that would override the State's manifest interest in preserving the family by protecting the father-child relationship from attack once it has been presumed for five years. The responsibility and right for resolving these competing interests rests with the legislature. Our deference to that power requires that we do not routinely brand the legislature's policy choices arbitrary and unreasonable. We decline to do so here. Limiting the period during which Daughter was allowed to file suit to prove that Respondent was not her father to five years was not an arbitrary and unreasonable limitation on her right to open courts, and therefore, not unconstitutional.
Daughter also argues that barring her claim after her fifth birthday violates her right to due process.[22] While Strahler explicitly based its holding only on open courts grounds,[23] the standard for evaluating due process challenges to statutes of limitations is similar.[24] Consistent with due process, "[t]he State may erect reasonable procedural requirements," such as statutes of limitation.[25] Statutes of limitation only violate due process if the period to bring actions is "clearly and plainly unreasonable."[26] As noted above, we find the legislature's decision to limit paternity challenges such as these to the first five years of the child's lifegiven the weighty interest in protecting the marital unit from delayed litigation regarding paternity and the uncertainty it fostersis not unreasonable. Accordingly, Daughter's right to due process of law was not violated by the trial court's dismissal of her suit.
Finally, Daughter challenges the five year limitations period on equal protection grounds. Daughter asserts that the UPA discriminates against her because a child without a presumed father under the act can file an action to declare a paternal relationship at any time before age twenty-one, while *940 she could only maintain such an action until the age of five.[27] While classifications operating to disadvantage illegitimate children are treated with intermediate-level equal protection scrutiny,[28] we do not understand Daughter to argue that this classification, purportedly disadvantaging her because of her legitimacy, requires similarly heightened scrutiny. But we need not address this question, since the statutory scheme withstands intermediate-level scrutiny. A child without a presumed father is given a lengthy period in which to establish such a relationship. Conversely, where such a relationship exists, the law seeks to protect it by allowing it to be challenged only within the first five years of a child's life. Limiting challenges to the presumed paternity of a man in Respondent's position to five years does not violate equal protection, since it is substantially related to the important governmental objective of maintaining existing paternal relationships.

Conclusion
The judgment of the circuit court is affirmed.
All concur.
NOTES
[1] On the Court's own motion, we have changed the style of the case to protect the identity of the minor child.
[2] Sections 210.817-210.852, RSMo 1994.
[3] Section 210.822.1, RSMo 1994.
[4] W.B. v. M.G.R., T.J.R. and M.E.R., 905 S.W.2d 134 (Mo.App.1995).
[5] Id. at 136.
[6] Section 210.826(2), RSMo Supp.1990.
[7] Section 210.826.1, RSMo 1994.
[8] 862 S.W.2d 338 (Mo. banc 1993).
[9] Id. at 340 (quoting Lucas v. Murphy, 348 Mo. 1078, 156 S.W.2d 686, 690 (1941)).
[10] Section 210.826(2), RSMo Supp.1990.
[11] 491 U.S. 110, 109 S.Ct. 2333, 105 L.Ed.2d 91 (1993).
[12] Id. at 121-30, 109 S.Ct. at 2341-46; Id. at 132-33, 109 S.Ct. at 2346-47 (Stevens, J., concurring in the judgment).
[13] Id. at 127, 109 S.Ct. at 2344 (non-spouse's claims of parental rights to children born into a marriage "not the stuff of which fundamental rights qualifying as liberty interests are made").
[14] Id. at 133, 109 S.Ct. at 2347 (Stevens, J., concurring in the judgment).
[15] Mo. Const., Art. I, sec. 14.
[16] Simpson v. Kilcher, 749 S.W.2d 386, 389 (Mo. banc 1988).
[17] 706 S.W.2d 7 (Mo. banc 1986).
[18] Id. at 12 n. 9 ("As we carefully note this case is narrowly ruled under the open courts guarantee.... Questions concerning ... other statute of limitations relating to minors are not before us in this case.").
[19] Id. at 12.
[20] Id. at 11.
[21] Id.
[22] While Daughter's brief is not a model of clarity, the thrust of her argument seems to be that she was denied procedural due process, and it is this claim that we address. We note, however, that a substantive due process claim on Daughter's behalf fails for the same reasons Appellant's does. Michael H., 491 U.S. at 131, 109 S.Ct. at 2346 (holding that child's "claim is the obverse of [putative father's] and fails for the same reasons").
[23] 706 S.W.2d at 12 n. 9.
[24] See, e.g., Blaske v. Smith & Entzeroth, 821 S.W.2d 822, 834 (Mo. banc 1991) (noting that due process examination of a statute of repose "is largely repetitious" of open courts analysis).
[25] Logan v. Zimmerman Brush Co., 455 U.S. 422, 437, 102 S.Ct. 1148, 1158-59, 71 L.Ed.2d 265 (1982).
[26] Magee v. Blue Ridge Prof'l Bldg. Co., 821 S.W.2d 839, 845 (Mo. banc 1991).
[27] Section 210.828.1, RSMo 1994.
[28] See e.g., Clark v. Jeter, 486 U.S. 456, 461, 108 S.Ct. 1910, 1914, 100 L.Ed.2d 465 (1988) (requiring laws classifying based upon illegitimacy to be "substantially related to an important governmental objective").