EX PARTE FRED SCHWALLER, PETITIONER, v. L. MAY, MARSHAL OF THE CITY OF ST. LOUIS, MISSOURI, RESPONDENT.—115 S. W. (2d) 207.

St. Louis Court of Appeals.   Opinion filed April 5, 1938.

*Philip A. Foley* counsel for petitioner.

*Edgar H. Wayman,* City Counselor, and *Martin Barrow,* Assistant City Counselor, for respondent.

BENNICK, C.—This is an original proceeding in *habeas corpus* wherein the petitioner, Fred Schwaller, alleges that he is being illegally deprived of his liberty by L. May, the Marshal of the City of St. Louis, by whom petitioner is being held in default of bond to answer in City Court No. 1 of the City of St. Louis to a charge of violation of an ordinance of said city [Ordinance No. 40660, section 19(2)], which makes it unlawful for a person to drive a motor vehicle upon the streets of the city during the period for which his driver's license is in a *status* of suspension or revocation.

The ordinance in question is one providing generally for the issuance of licenses to operators of motor vehicles and for the suspension and revocation of licenses upon conviction of certain specified offenses. It creates a Motor Vehicle Commission for the administration of the ordinance, and provides that the commission "shall have full power to suspend or revoke any driver's license . . . as ordered by a court of competent jurisdiction."

Section 15 of the ordinance provides that upon the conviction of any person for the violation of any provision either of such ordinance or of any other ordinance regulating the operation of motor vehicles on the streets of the city, the judge of the court, in addition to any punishment that may be imposed as in the particular ordinance provided, "may order the suspension by the Commission of the driver's license of said person for a period not to exceed six (6) months," and that upon the conviction of any person of any one of certain specified offenses of a serious nature, the judge "shall order the rev-

ocation by the Commisioner of the driver's license" of any person so convicted.

In other words, in the case of the conviction of any person of an ordinary traffic offense, it is made discretionary with the judge whether, in addition to the punishment imposed, he will order the suspension of such person's driver's license, but in the case of a person's conviction for any one of the specified serious offenses such as manslaughter resulting from the operation of an automobile, driving a vehicle while under the influence of intoxicating liquor, or leaving the scene of an accident, it is made mandatory and compulsory that the judge shall order the outright revocation of the license.

Elsewhere in the ordinance the commission is required to obtain daily reports from both the city courts and the court of criminal correction of the names of all persons whose licenses were suspended or revoked on that day, and to promptly notify the police department of such case of suspension or revocation. It is further provided that whenever a license is either suspended or revoked, the licensee is required to surrender the same to the court, which in turn delivers the license to the commission by which it is thereafter retained until the expiration of the period of suspension, when it is restored to the licensee upon his demand therefor.

So far as the present case is concerned, it is disclosed that petitioner, on November 2, 1937, was convicted on a charge of speeding by the judge of City Court No. 1, and that in addition to the fine imposed the judge ordered the commission to suspend petitioner's driver's license for a period of forty days.

Thereafter petitioner perfected his appeal to the court of criminal correction, wherein, on December 6, 1937, the case was tried *de novo* to a jury. It appears to be a conceded fact that the judge instructed the jury in such trial that in the event of a verdict of guilty they had the power to order a suspension of petitioner's driver's license. At any rate the jury did return a verdict finding petitioner guilty as charged in the information, and assessing his punishment at a fine of $100 "and license suspended for six months."

Respondent's counsel agree with counsel for petitioner that as the ordinance is written it was no part of the function of the jury to order the suspension of petitioner's driver's license, but they insist that for the purposes of this proceeding so much of the verdict as purported to direct a suspension of license, though void for want of any such power on the part of the jury, should merely be treated as surplusage, and as not sufficing to affect or nullify the portion of the verdict finding petitioner guilty as charged and assessing his punishment at a fine of $100.

It is true, as counsel point out, that the ordinance invests the judge alone with the power to order the suspension or revocation of any person's driver's license upon his conviction of an effense involving

the use of a motor vehicle, but regardless of the ineffectiveness of the action of the jury in purporting to exercise a function which reposed entirely in the judge, the important thing is that following the return of the verdict of guilty, when the court came to enter up the judgment of conviction, it did include therein an order for the suspension of petitioner's driver's license for a period of six months. So the fact is that in the entry of judgment the judge did exercise the power with which he alone was invested under the ordinance, and the order is none the less to be taken as the judge's order because it was entered in conformity with what at most was but an advisory verdict or recommendation of the jury.

Following the entry of the judgment of conviction on December 6, 1937, the petitioner made application for an appeal to this court, where the case will be heard after the transcript of the record is sent up by the lower court. At the time of the taking of the appeal he also gave bond which was approved by the court, and, as will presently appear, the question determinative of this proceeding is whether the bond, in addition to operating as a *supersedeas* or stay of execution with respect to the fine imposed, is likewise to be taken as a *supersedeas* or stay of execution with respect to the order of the court suspending petitioner's driver's license.

Thereafter, on January 14, 1938, which was well within the period for which petitioner's driver's license was under suspension unless the order suspending the same was stayed during the pendency of his appeal to this court from the judgment of conviction in the court of criminal correction, he was arrested and charged with the offense of operating a motor vehicle upon the streets of the city while his driver's license was in a status of suspension. He is now being held in the custody of respondent to answer in city court to that charge, and the question to be determined in this proceeding in *habeas corpus* is whether, under the facts as we have detailed them, his detention for that purpose unlawfully and illegally deprives him of his liberty.

We are of course aware that the license issued to petitioner to operate a motor vehicle upon the streets of the city was in no sense a contract between him and the city so as to be the basis of any claim of absolute right on his part to its continued possession. To the contrary, it amounted to no more than a personal privilege extended to him to be exercised subject to the restrictions placed upon its use by the sovereign power of its creation, which means that he took it subject to the right of suspension or revocation on such conditions as the ordinance imposes.

It would appear from the decisions of other jurisdictions that statutes and ordinances providing for the licensing of drivers of motor vehicles are quite commonly drawn so as to vest the power of suspension or revocation, not in the courts, but in some administrative officer or board of a *status* comparable in some respects to that

of the local Motor Vehicle Commission. Sometimes such officer or board is empowered to act independently of any criminal or *quasi-*criminal proceeding with respect to the suspension or revocation of a license; sometimes the officer or board has a discretion in the matter even after a judgment of conviction is obtained; and sometimes the suspension or revocation of the license, though no part of the judgment of the court in those cases where the court is invested with no such jurisdiction, nevertheless follows mandatorily as a result imposed by law upon the receipt by the officer or board of the record of conviction.

The distinguishing feature of the local ordinance is that while it creates the Motor Vehicle Commision and give it the power, among other things, "to suspend or revoke any driver's license," it does not authorize the commission to exercise such power of its own initiative independently of any criminal or *quasi-*criminal proceeding, but only "as ordered by a court of competent jurisdiction." In other words, it is the court alone which has the power to order the suspension or revocation of the license, and once its order is issued and becomes effective the commission is left with no discretion but to obey it, and in so doing acts only ministerially in noting the fact of the suspension or revocation upon the license and in advising the police department accordingly.

There appears to be only one exception to this procedure, which is that a second suspension within one year for the same offense, or in any event a third suspension within one year, operates automatically to revoke the license. However in such a situation the commission still exercises no discretion in the matter, but instead the revocation follows mandatorily under the terms of the ordinance itself as the consequence of the second or third suspension which is ordered by the court.

And not only is the power to order the suspension or revocation of the license vested solely in the judge of the court before whom the licensee is brought to trial for some offense involving the operation of a motor vehicle, but in ordering the suspension or revocation the judge acts judicially and not in any mere administrative capacity. As a matter of fact the order can be entered only in the course of a criminal or *quasi-*criminal proceeding, and even then only upon a plea of guilty, or upon a conviction, or upon the forfeiture of a bond for the appearance of the licensee for trial upon the charge which is brought against him. Thus it is to be seen that while the ordinance unquestionably contemplates the public safety in providing for the suspension or revocation of a license, yet the power which is vested in the judge, considering the circumstances under which it may be exercised, is obviously the power to punish for traffic offenses great or small, and any suspension or revocation of a license which is ordered by the judge is therefore a part of the pun-

ishment imposed upon the offender, regardless of what other purpose may be served thereby.

But if this is true, then an appeal with bond, which operates to stay the execution of the judgment of conviction, must no less stay the order suspending or revoking the driver's license than it does the fine assessed or the sentence of imprisonment imposed. Indeed the fundamental idea of granting *supersedeas* pending one's appeal from a judgment of conviction is that if, notwithstanding the appeal, he were to be subjected to the punishment assessed against him while his appeal was pending and before it could be heard, then the relief afforded by appeal would be measurably defeated and impaired, if not destroyed altogether. [Ex parte Carey, 306 Mo. 287, 267 S. W. 806.]

So in the case at hand petitioner is not to be deprived of the use and benefit of his driver's license pending his appeal with bond, nor does the public interest suffer by this conclusion, since if the judgment of conviction is affirmed, then it will become operative as to the order of suspension, and petitioner will be without his license for the same period of time as would have been the case had the order become effective contemporaneously with the entry of the judgment of conviction from which the appeal was taken.

Inasmuch as it conclusively appears from the conceded facts of the case that petitioner has not committed the offense for which he is now being held in respondent's custody to answer in city court, it follows that he is being illegally and unlawfully deprived of his liberty and should be discharged. The Commissioner so recommends.

PER CURIAM:—The foregoing opinion of BENNICK, C., is adopted as the opinion of the court.

The petitioner is, accordingly, discharged. *Hostetter, P. J.,* and *Becker* and *McCullen, JJ.,* concur.