**Paul V. BARBIERI, a Minor, by his father and next friend, William M. Barbieri, Appellant,**

v.

**M. E. MORRIS, Director of Revenue, State of Missouri, Respondent.**

No. 46689.

Supreme Court of Missouri,

Division No. 2.

Sept. 8, 1958.

Roger J. Barbieri, Kansas City, for appellant.

John M. Dalton, Atty. Gen., James E. Conway, ·Asst. Atty. Gen., for respondent.

STOCKARD, Commissioner.

Paul V. Barbieri, a minor, by his father and next friend, William M. Barbieri, has appealed from a judgment of the circuit court of Jackson County affirming the order of the Director of Revenue, State of Missouri, suspending his license to operate an automobile for a period of 90 days.

Section 302.281 RSMo 1949, V.A.M.S., as worded before it was repealed effective

August 29, 1955, provided that the Director of Revenue should suspend the license of a person to operate an automobile for a period not to exceed one year upon a showing by public records that he was a "habitual violator of traffic laws." Section 302.010, as worded before it was repealed effective August 29, 1955, defined a "habitual violator of traffic laws" as a person who had been adjudged guilty ·"at least five times within one year" of violating traffic laws or ordinances other than nonmoving traffic violations. Both of these Sections were repealed and re-enacted effective August 29, 1955, and as re-enacted, in the parts here material, are as follows:

"[Section] 302.281. Suspension of license—causes.

"1. The director [circuit judge or magistrate] shall suspend the license of an operator or chauffeur for a period of not to exceed one year, upon a showing by the records of the director or any public records that the operator or chauffeur

\* \* \* \* \* \*

"(3) Is an habitual violator of traffic laws."

"[Section] 302.010 Definitions.

"When used in this chapter the following words and phrases mean:

\* \* \* \* \* \*

"(8) 'Habitual violator of traffic laws', [is] a person who has been adjudged guilty at least four times within two years of violating any traffic laws or ordinances other than nonmoving traffic violations and violations of sections 304.170 to 304.280, inclusive, relating to the sizes and weights of vehicles."

The admitted facts in this case are that between the dates of May 20, 1954 and October 1, 1955, Paul V. Barbieri was four times adjudged guilty of violating traffic laws or ordinances, other than those excluded by Section 302.010(8), and that thereafter the Director of Revenue suspended his license to operate an automobile for a period of 90 days for the asserted reason that he was a "habitual violator of traffic laws." However, three of the convictions occurred prior to August 29, 1955, the effective date of Sections 302.281 and 302.010(8).

Paul appealed to the circuit court of Jackson County, as provided by Section 302.311, and after a hearing the circuit court entered its judgment sustaining the order of suspension. After his motion for new trial was overruled, apparently by operation of law, Paul appealed to the Kansas City Court of Appeals, but the appeal was subsequently transferred here because a "state officer as such is a party." Art. V, Section 3, Constitution of Missouri, V.A. M.S.

On this appeal Paul contends that the trial court erred because the order of suspension was "arbitrary and capricious in its effect by extending [the provisions of Sections 302.010(8) and 302.281] retrospectively," and because the order was "retroactive in its operation in that it attached a new disability" to him.

The issuance by the State of Missouri of a license to operate a motor vehicle on the public streets and highways does not create any contractual or vested right in the one to whom it is issued for its continued possession. Schwaller v. May, 234 Mo.App. 185, 115 S.W.2d 207, 209; 60 C.J.S. Motor Vehicles § 169; 5A Am.Jur., Automobiles and Highway Traffic, § 136; Blashfield, Cyclopedia of Automobile Law and Practice, § 580. It amounts to no more than a personal privilege extended by the state to be exercised subject to the restrictions imposed on its use. City of St. Louis v. Mosier, Mo.App., 223 S.W.2d 117; Schwaller v. May, supra; 60 C.J.S. Motor Vehicles § 159. Therefore such a license is subject to suspension or revocation as the statutes may provide on any ground that would justify a refusal to issue the license in the first instance. 60

C.J.S. Motor Vehicles § 160. There is no contention on this appeal that in the exercise of its police powers the State of Missouri could not suspend the privilege of any person to operate an automobile if he is what has legislatively been defined to be a "habitual violator of traffic laws." Therefore, the only questions are (1) whether the Legislature provided that convictions occurring prior to August 29, 1955, should be counted with those occurring thereafter in establishing four convictions within a period of two years, and (2) if so, whether this would result in Sections 302.010(8) and 302.281 being "retrospective in [their] operation" in violation of Art. I, Section 13, Constitution of Missouri.

■ The legislative definition of a "habitual violator of traffic laws" is declared to be a person who *has been* (not who shall be) adjudged guilty at least four times within two years of violating certain traffic laws or ordinances. There is no qualifying phrase to the effect that the two years shall be "after the effective date" of Section 302.010(8). From the language used, it is clear that the Legislature intended to define a "habitual violator of traffic laws" as one who has been four times convicted of certain traffic laws within a two-year period without regard to whether one or more of the convictions occurred before August 29, 1955. We think this is also consistent with the purpose of the statute. A habitual traffic violator is a menace on the public highways, and he is no less a menace because some of his convictions of traffic laws occurred before August 29, 1955. It was to protect the public, not to impose additional punishment on Paul, that the Legislature provided that under the circumstances of this case the Director should suspend Paul's license to operate an automobile for a period not to exceed one year. What was said in Dinger v. Burnham, 360 Mo. 465, 228 S.W.2d 696, 699, pertaining to the legislative direction that persons below the age of sixteen should not operate automobiles at all is appropriate here. "The purpose of statutes regulating * * *

automobile traffic on the highways is the promotion of the safety of the public. * * * Automobiles may be safer than horse-drawn vehicles when prudently driven but the special training required for their operation and their potential power to harm when improperly operated imposes a duty to keep them out of the hands of the immature, the incompetent, and the reckless."

The provisions of the statutes previously quoted clearly indicate that it was the intention of the Legislature that the director take the action he did in this case. This leaves only the question of whether this results in the statutes being "retrospective in [their] operation" in violation of Art. I, Sec. 13, Constitution of Missouri, under the particular facts of this case.

■ " 'Retroactive' or 'retrospective' laws are generally defined, from a legal viewpoint, as those which take away or impair vested rights acquired under existing laws, or create a new obligation, impose a new duty, or attach a new disability in respect to transactions or considerations already past." Lucas v. Murphy, 348 Mo. 1078, 156 S.W.2d 686, 690. But it has been held specifically that a "statute is not retrospective because it merely relates to prior facts or transactions but does not change their legal effect, or because some of the requisites for its action are drawn from a time antecedent to its passage, or because it fixes the status of a person for the purpose of its operation." State ex rel. Sweezer v. Green, 360 Mo. 1249, 232 S.W. 2d 897, 900, 24 A.L.R.2d 340. It is said to be retroactive "only when it is applied to rights acquired prior to. its enactment." 82 C.J.S. Statutes § 412. See also State ex rel. Ross, to Use of Drainage Dist. No. 8 of Pemiscot County v. General American Life Ins. Co., 336 Mo. 829, 85 S.W.2d 68, 74; Dye v. School District No. 32 of Pulaski County, 355 Mo. 231, 195 S.W.2d 874, 879; 16A C.J.S. Constitutional Law § 414. Paul admits in his brief that the right to drive an automobile is not a vested right,

# 715

and as stated in State ex rel. Sweezer v. Green, supra, "We have many times held that a statute is not retrospective in its operation within the constitutional prohibition, unless it impairs a vested right."

 Paul had no vested right in the statutes existing prior to August 29, 1955, defining a "habitual violator of traffic laws" which would preclude its amendment, State v. Missouri Pacific Railway Company, 242 Mo. 339, 147 S.W. 118, and although a portion of the requisites for action by the Director antedate the effective date of the present Sections 302.010(8) and 302.281, that does not result in the statutes being retrospective in their operation under the facts of this case. Those antecedent facts may be used to establish Paul's status as of the effective date of the statutes, State ex rel. Sweezer v. Green, supra, and upon that date, August 29, 1955, Paul was a person who had three times been adjudged guilty of violating traffic laws or ordinances. He was then charged with knowledge that if he were again adjudged guilty of a traffic violation within two years of the first of his previous three convictions he would be a "habitual violator of traffic laws" within the new definition. Paul had no vested right to commit three traffic violations, and to be convicted therefor, subsequent to the effective date of Sections 302.010(8) and 302.281 before a fourth conviction within a two-year period would result in his being a "habitual violator of traffic laws." By reason of the enactment of Sections 302.010(8) and 302.281, as now worded, the Director was not on August 29, 1955, authorized to take any action in respect to suspending Paul's license to operate an automobile. Absent a fourth conviction, Paul had every right to continue to operate an automobile as any person in the State of Missouri. When he thereafter received his fourth conviction within a period of two years he then, and not until then, became a "habitual violator of traffic laws" and subject to having his license to operate an automobile suspended. Therefore, Sections 302.010(8) and 302.281 did

not take away or impair any vested right of his, neither did they impose any new obligation or duty nor attach any disability on Paul in respect to transactions already past. Therefore, under the facts of this case, the Director of Revenue was authorized to suspend Paul's license to operate an automobile.

The judgment is affirmed.

BOHLING and BARRETT, CC., concur.

PER CURIAM.

The foregoing opinion by STOCKARD, C., is adopted as the opinion of the Court.

All concur.