Nathan C. BLYDENBURG, Respondent,

v.

Thomas A. DAVID, Director, Department
of Revenue, Appellant.

No. 52142.

Supreme Court of Missouri,
En Banc.

March 13, 1967.

Rehearing Denied April 10, 1967.

Wilbur L. Pollard, North Kansas City, Williams, Norton & Pollard, North Kansas City, of counsel, for respondent.

Norman H. Anderson, Atty. Gen., John H. Denman, Asst. Atty. Gen., Jefferson City, Max Von Erdmannsdorf, Asst. Pros. Atty., Clay County, for appellant.

STORCKMAN, Chief Justice.

This is a proceeding under § 564.444, subd. 2, RSMo Cum.Supp., V.A.M.S. 1965, Laws 1965, S.B. 45, § 4, to require the Director of Revenue to reinstate the plaintiff's license to operate a motor vehicle. The trial court held that the Director of Revenue did not have the power and authority to revoke the plaintiff's drivers license and the privilege of operating a motor vehicle because "said revocation was a violation of plaintiff's constitutional rights under the provisions of the Constitution of the United States and the Constitution of the State of Missouri." The defendant Director appealed.

Insofar as presently pertinent, § 564.441 of our statutes provides that: "Any person who operates a motor vehicle upon the public highways of this state shall be deemed to have given consent to, subject to the provisions of sections 564.441, 564.442 and 564.444, a chemical test of his breath for the purpose of determining the alcoholic content of his blood if arrested for any offense arising out of acts which the arresting officer had reasonable grounds to believe were committed while the person was driving a motor vehicle while intoxicated. The test shall be administered by or at the direction of a law enforcement officer whenever the person has been arrested for the offense." Section 564.442 relates to the effect of the chemical analysis as evidence in the trial of a charge of driving a motor vehicle while intoxicated. Section 564.444, subd. 1, provides that, if a person under arrest refuses to submit to a chemical test when requested under the conditions specified, such person's operating license may be revoked by the Director of Revenue for not more than a year on the sworn statement of the arresting officer. Section 564.444, subd. 2,

provides a procedure by which a person whose license has been revoked may test the validity of the revocation in a court of record.

On November 27, 1965, at about 5:45 p. m., the plaintiff was driving his automobile in a northerly direction on North Agnes Street in Kansas City, Clay County, Missouri. At 53rd Street his automobile crossed over a T-intersection, went off the street across a ditch onto private property, ran over some shrubs and came to rest against a telephone pole. The plaintiff testified that he intended to turn left into 53rd Street but was forced off the road by another automobile which did not stop; that he went to a nearby shopping center, telephoned the local police station and reported the accident but was told by the person with whom he talked that he should get his car off himself; that he then called his wife and she picked him up in another car in about forty-five minutes and they returned to the scene of the accident. Police officers were there when they arrived.

Donald R. Whitaker, a member of the Kansas City Police Department, testified that on his return the plaintiff at first asked what was going on and acted as if he had not been there before; he finally admitted, however, that the car was his and stated that he had gone to call the police. The Officer further testified that he smelled a strong odor of alcohol on plaintiff's breath, that plaintiff's speech and manner at the scene indicated he had had too much to drink, and that the plaintiff gave the lady who owned the property "a rough time" because she wanted his car removed. Officer Whitaker told the plaintiff he was going to arrest him for driving while intoxicated and careless driving; he asked the plaintiff if he would agree to take the breath test to determine the alcoholic content of his blood and he indicated he would, but when they got to the police station the plaintiff refused. Officer Whitaker testified that both he and another officer explained to the plaintiff that his drivers license could be revoked if he

refused to take the test but the plaintiff persisted in his refusal. During this interval the plaintiff became obnoxious, would not listen to the officers, and called one of the officers a loud mouth. No other sobriety tests were given.

During his testimony the plaintiff admitted that he was asked by the officers to blow into the tube of the testing device and that he refused to do so. He also admitted that he had drunk six or eight cans of 5% beer during the afternoon prior to the accident and that there was an odor of beer about him when he was talking to the officers, but he denied being under the influence of alcohol at the time of the accident. He also admitted that he was arrested and that he was "convicted of driving under the influence" as a result of the accident.

The plaintiff's petition for a hearing alleges that the action was brought pursuant to § 564.444; that the plaintiff was notified by the Director under date of December 2, 1965, "that his privilege of operating a motor vehicle in the State of Missouri is revoked for one year"; that he was arrested on November 27, 1965, but "the arresting officer did not state the reasons for requesting him to submit to a chemical test, nor did said arresting officer advise him that his license could be revoked on his refusal to take such a test." Paragraph 4 of the petition further alleged that plaintiff's "privilege to operate a motor vehicle in the State of Missouri has been revoked in controvention of his constitutional rights under the provisions" of the federal and state constitutions. The trial court found for the plaintiff solely on the allegations of paragraph 4 of the petition which as above stated were that his constitutional rights had been violated.

The Director asserts that the trial court erred in holding the statutes unconstitutional because the plaintiff did not properly allege any constitutional violations. Cases relating to the time and manner in which constitutional questions must be raised to

preserve them for review on appeal are not in point here because the court adopted and incorporated the general charge of unconstitutionality in the judgment. The most bothersome feature at this stage of the case is the failure of the judgment to specify the particular constitutional provisions found to be violated. Even though the allegations of the petition did not comport with good pleading, the constitutional questions became an inseparable part of the issues that must be reviewed on appeal since the general holding of unconstitutionality is the sole ground of the trial court's decision. Kansas City v. Hammer, Mo., 347 S.W.2d 865, 867[2].[1]

■ Of the three factual issues specified for a determination by § 564.444, subd. 2, the plaintiff admitted he was arrested and that he refused to submit to the test. The evidence was sufficient to establish that the arresting officer had reasonable grounds to believe the plaintiff was driving a motor vehicle while in an intoxicated condition. The plaintiff's contentions on this appeal are that the requirements of §§ 564.441–564.444 are in violation of due process of law as well as the constitutional provisions against self-incrimination, and that the legislative grant of authority to the Director of Revenue under these statutes, sometimes referred to as the Implied Consent Law, is in violation of constitutional provisions and also in conflict with legislative provisions for administrative procedure and review under Chapter 536, RSMo 1959, V.A.M.S.

The recent decision of the United States Supreme Court in Schmerber v. State of California, 1966, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908, has established controlling constitutional standards for determining the admissibility of the results of a

similar sobriety test as evidence in a criminal case. The legal principles pronounced are highly persuasive of the proper disposition of the constitutional issues in the instant case. Schmerber was convicted in Los Angeles Municipal Court of the criminal offense of driving an automobile while under the influence of intoxicating liquor. He was arrested at the hospital where he was being treated for injuries received in the accident; at the direction of a police officer a blood sample was taken from Schmerber's body by a physician at the hospital. The chemical analysis of the sample indicated intoxication and the report was admitted in evidence at the trial. Schmerber objected to the evidence on the ground that the blood had been withdrawn despite his refusal, on advice of counsel, to consent to the test. The United States Supreme Court held the report of the analysis was properly admitted in evidence and affirmed the conviction.

Schmerber contended that admission of the evidence pertaining to the alcoholic content of his blood in view of the means by which it was obtained violated constitutional guarantees of due process of law and his right against self-incrimination; he also interposed additional defenses not involved in the case at bar. The nature of this kind of evidence and the reasonableness and efficacy of such chemical analyses was dealt with as follows in the opinion: "We are told that the percentage of alcohol in the blood begins to diminish shortly after drinking stops, as the body functions to eliminate it from the system. Particularly in a case such as this, where time had to be taken to bring the accused to a hospital and to investigate the scene of the accident, there was no time to seek out a magistrate and secure a warrant. Given these special facts, we conclude that

1. However, the failure of the trial court to specifiy the particular constitutional provisions deemed to be violated is contrary to the practice contemplated by S.Ct. Rule 73.01(b), V.A.M.R. The lack of specificity adds to the difficulty of briefing and reviewing the case on appeal and suggests that a sanction should be provided similar to that of S.Ct. Rule 83.06(b) whereby the respondent may be required to file the first brief when the trial court grants a new trial without specifying of record the ground or grounds on which it is granted.

the attempt to secure evidence of blood-alcohol content in this case was an appropriate incident to petitioner's arrest.

"Similarly, we are satisfied that the test chosen to measure petitioner's blood-alcohol level was a reasonable one. Extraction of blood samples for testing is a highly effective means of determining the degree to which a person is under the influence of alcohol. See Breithaupt v. Abram, 352 U.S. 432, at 436, n. 3, 77 S.Ct. 408, at 410, 1 L.Ed.2d 448. Such tests are a commonplace in these days of periodic physical examinations and experience with them teaches that the quantity of blood extracted is minimal, and that for most people the procedure involves virtually no risk, trauma, or pain. Petitioner is not one of the few who on grounds of fear, concern for health, or religious scruple might prefer some other means of testing, such as the 'breathalyzer' test petitioner refused, see n. 9, supra. We need not decide whether such wishes would have to be respected." 86 S.Ct. at page 1836.

█ As indicated by the opinion, a "breathalyzer" test is a chemical analysis of breath exhaled from a person's lungs through a tube into a balloon-type container. This test has the advantage of utilizing the product of a normal bodily function without puncturing skin or tissue as is done in withdrawing a sample of blood. In this respect the breathalyzer test is less objectionable than a blood test and must be held to be a reasonable one.

With respect to the claim of privilege against self-incrimination, the Schmerber opinion further states: "We hold that the privilege protects an accused only from being compelled to testify against himself, or otherwise provide the State with evidence of a testimonial or communicative nature, and that the withdrawal of blood and use of the analysis in question in this case did not involve compulsion to these ends." 86 S.Ct. at pages 1830 and 1831.

"It is clear that the protection of the privilege reaches an accused's communications, whatever form they might take, and the compulsion of responses which are also communications, for example, compliance with a subpoena to produce one's papers. * * * On the other hand, both federal and state courts have usually held that it offers no protection against compulsion to submit to fingerprinting, photographing, or measurements, to write or speak for identification, to appear in court, to stand, to assume a stance, to walk, or to make a particular gesture. The distinction which has emerged, often expressed in different ways, is that the privilege is a bar against compelling 'communications' or 'testimony,' but that compulsion which makes a suspect or accused the source of 'real or physical evidence' does not violate it." 86 S.Ct. 1832.

"Since the blood test evidence, although an incriminating product of compulsion, was neither petitioner's testimony nor evidence relating to some communicative act or writing by the petitioner, it was not inadmissible on privilege grounds." 86 S.Ct. at 1833.

█ Likewise, the report of the chemical analysis to determine alcoholic content of the blood as provided by our statutes and the means of obtaining the sample do not violate the privilege against self-incrimination guaranteed by the Fifth Amendment of the United States Constitution or § 19 of Article 1 of the Missouri Constitution.

As previously noted, Schmerber v. State of California cites and relies on Breithaupt v. Abram, 1957, 352 U.S. 432, 77 S.Ct. 408, 1 L.Ed.2d 448, which was a habeas corpus proceeding involving a conviction of involuntary manslaughter. In the Breithaupt case, the motor-vehicle operator was unconscious at the time the blood was withdrawn and, therefore, had no opportunity to object to the procedure. In denying the claim of violation of the due process clause, the Schmerber opinion further evaluates and approves the Breithaupt decision as

follows: "We affirmed the conviction there resulting from the use of the test in evidence, holding that under such circumstances the withdrawal did not offend 'that "sense of justice" of which we spoke in Rochin v. [People of] California, 1952, 342 U.S. 165, 72 S.Ct. 205, 96 L.Ed. 183.' 352 U.S., at 435, 77 S.Ct. at 410. *Breithaupt* thus requires the rejection of petitioner's due process argument, and nothing in the circumstances of this case or in supervening events persuades us that this aspect of *Breithaupt* should be overruled." 86 S.Ct. at page 1830.

■ The breath test provided by the Missouri statutes does not require even "minor intrusions into an individual's body", as the Schmerber case termed the taking of samples of blood. 86 S.Ct. at page 1836. The provisions of the Missouri statutes fall well within the constitutional framework and standards established by the Schmerber decision and, therefore, do not violate substantive due process of law.

The plaintiff asserts that the statutes permit "the arresting officer to administer any and all tests he desired at the stationhouse" and infers that Schmerber condemns the giving of a breath test at a police station. We cannot agree with the premise or the conclusion. As previously indicated, the Schmerber case indicates that the taking of a sample of a person's breath for a chemical test is less objectionable than taking a sample of blood from the body. In the course of his argument, the plaintiff further asserts that he was precluded from exercising his "basic right" of cross-examining the Director, that he had no opportunity to determine if the Director acted on "conclusions contained in the police officer's sworn affidavit", that the statutes do not provide legislative standards and impose on him the burden to initiate a lawsuit in a court of record. Insofar as these contentions present anything for consideration, they are not supported by the plaintiff's authorities. The statutes in question demonstrate the contrary. Legislative standards

and procedures are provided and it has not been demonstrated that they are insufficient or unreasonable.

■ The due process clauses and the provisions against self-incrimination of the United States and Missouri constitutions differ only slightly in language and none in meaning; there is no conflict in construction and, therefore, no reason for plaintiff's apparent apprehension that Missouri decisions are not in harmony with those of the United States Supreme Court. We have examined Wall v. King, 1 Cir., 206 F.2d 878; Colling v. Hjelle, N.D., 125 N.W.2d 453; State v. Bock, 80 Idaho 296, 328 P.2d 1065; Joint Anti-Fascist Refugee Committee v. McGrath, 341 U.S. 123, 71 S.Ct. 624, 95 L.Ed. 817, and other authorities cited by the plaintiff. We find nothing in them that lends any support to plaintiff's claim that §§ 564.441–564.444 are unconstitutional. The Joint Anti-Fascist Refugee Committee case states the rule which this court recognizes and follows, that due process of law contemplates notice and an opportunity to be heard.

■ In the exercise of its police powers, a state may require a person to be licensed as a condition precedent to operating a motor vehicle on public highways, and such license is a privilege or a qualified right that is subject to suspension or revocation as may be provided by law on any ground that would justify a refusal to issue a license in the first instance if such suspension or revocation is not done arbitrarily and in disregard of procedural due process. Levin v. Carpenter, Mo., 332 S.W.2d 862, 865[1, 2], 79 A.L.R.2d 859; Barbieri v. Morris, Mo., 315 S.W.2d 711, 713[1, 2]; City of St. Louis v. Mosier, Mo.App., 223 S.W.2d 117, 120[5]; Schwaller v. May, 234 Mo. App. 185, 115 S.W.2d 207, 209[2]; 60 C. J.S. Motor Vehicles §§ 159 and 160; 7 Am.Jur.2d, Automobiles and Highway Traffic § 109; Blashfield's Cyclopedia of Automobile Law and Practice, Vol. 1, § 580.

A license to operate a motor vehicle may be suspended or revoked by an administrative agent authorized by law to do so without prior notice or a hearing since due process of law is satisfied if there is provision for an administrative hearing subject to judicial review or the right to have a hearing in a court which may adequately review the administrative decision. Section 22, Art. 5, Constitution of Missouri; State ex rel. Leggett v. Jensen, Mo., 318 S.W.2d 353, 358[3]; 7 Am.Jur.2d, Automobiles and Highway Traffic § 121; 60 C.J.S. Motor Vehicles § 160 d(2) and (3). The general statement of this rule in 7 Am.Jur.2d, Automobiles and Highway Traffic § 121, p. 683, is: "Under some statutes providing for the suspension or revocation of a driver's license, no notice or hearing before the suspension or revocation of one's license is necessary, and the validity of such statutes has been sustained as against various constitutional objections. Since a license to operate a motor vehicle is in no sense a contract or property right, but merely a privilege, the suspension or revocation of such license without notice or a hearing does not deprive the licensee of his property without due process of law, so long as the licensee is given the right of appeal or review of the suspension or revocation."

Section 564.440 provides that no person shall operate a motor vehicle while in an intoxicated condition and provides grades of offenses and penalties for successive violations. Sections 302.302 through 302.309 provide, among other things, for the suspension and revocation of driving licenses by the Director of Revenue under a system of assessing points on conviction of various offenses. Section 302.291 authorizes the Director of Revenue to require a licensed operator to submit to a re-examination as to his qualifications to retain his driving license and the refusal or neglect of the licensee to submit to such examination is a sufficient ground for suspension or revocation of the license. See Wilson v. Morris, Mo., 369 S.W.2d 402, 406–407[5–7].

Sections 564.441 through 564.444 are civil in nature. They provide a method whereby an operator's driving license may be suspended or revoked for refusal to submit to a sobriety test and for a judicial review of such administrative action. These Implied Consent Laws, as they are sometimes called, originated and were further developed in the State of New York. What appears to have been the first sobriety test statute was held unconstitutional in Schutt v. Macduff, 205 Misc. 43, 127 N.Y.S.2d 116, because the statute was not limited to situations where there had been a lawful arrest of the motorist and there was no provision for a hearing at some stage of the proceedings. The New York statute was amended and the new law, in Anderson v. Macduff, 208 Misc. 271, 143 N.Y.S.2d 257, was found not to be violative of due process of law or the right against self-incrimination. The essential elements of the New York statutes have been embodied in the Implied Consent Law of Missouri and other states. In such form, courts have generally approved the statutes and rejected claims of unconstitutionality and objections to the administrative procedure provided. See Gottschalk v. Sueppel, Iowa, 140 N.W.2d 866; Lee v. State, 187 Kan. 566, 358 P.2d 765; Prucha v. Department of Motor Vehicles, 172 Neb. 415, 110 N.W.2d 75, 88 A.L.R.2d 1055; Timm v. State, N.D., 110 N.W.2d 359; Finocchairo v. Kelly, 11 N.Y.2d 58, 226 N.Y.S.2d 403, 181 N.E.2d 427; State v. Bock, 80 Idaho 296, 328 P.2d 1065, and a comprehensive annotation in 88 A.L.R.2d 1064.

Section 564.443 provides that an arrest without a warrant for a violation of § 564.440 is lawful whenever the arresting officer has reasonable grounds to believe that the person to be arrested has violated the section whether or not the violation occurred in the presence of the arresting officer. Section 564.444, subd. 2, provides that the person whose license has been revoked may have a hearing before a court of record and authorizes the court to order the Director to reinstate the license

or permit to drive upon proper findings. We find that the Missouri statutes completely satisfy the requirements of due process of law and are not unconstitutional on any of the grounds urged by the plaintiff.

 Next the plaintiff claims that the Director of Revenue lacks authority to suspend or revoke the license of the operator of a motor vehicle because the powers purported to be conferred by §§ 564.441–564.444 enlarge upon the duties of the Director as set forth in § 22, Art. 4, of the Missouri Constitution. This section provides that the Director of Revenue shall be in charge of the department of revenue which shall have divisions of collection, budget and comptroller and such other divisions as provided by law, and the division of collection shall collect all licenses and fees payable to the state. We cannot agree that the provisions of § 22 are limitations that preclude the general assembly from authorizing the Director to suspend or revoke drivers' licenses. The Director's department is in charge of collecting license fees which logically and reasonably includes the power to issue drivers' licenses and collect the fees. The authority to suspend or revoke when conferred by the general assembly is reasonably ancillary to that power. Furthermore, the section expressly contemplates related areas in which the general assembly may legislate. The manner of expressing a constitutional intention of limiting the power of the general assembly to confer on state officers unrelated duties is demonstrated by the concluding provisions of §§ 13, 14, and 15 of Art. 4, dealing with the duties of the auditor, secretary of state and state treasurer, respectively. The contention that § 22 prohibits the general assembly from conferring on the Director of Revenue the authority to suspend and revoke drivers' licenses is denied.

The plaintiff's final contention is that the powers conferred on the Director by the statutes in question conflict and are not consistent with Chapter 536, RSMo, entitled, Administrative Procedure and Review. The plaintiff does not make it clear in precisely what respect the conflict occurs. Section 536.150 provides that when any administrative officer or body shall have rendered a decision which is not subject to administrative review determining the legal rights, duties, and privileges of any person, including the denial or revocation of a license, and there is no other provision for judicial inquiry into or review of such decision, it may be reviewed by suit for injunction, certiorari, mandamus, prohibition or other appropriate action. The section further provides in subdivision 3 that it shall not be construed to impair any power to take summary action lawfully vested in such administrative officer or body or to limit the jurisdiction of any court or the scope of any remedy available in the absence of the section.

 There is nothing in the constitution or Chapter 536 that requires all administrative acts to be reviewed in the same manner, and the general assembly has very properly provided for special review procedures in particular cases. The method provided under §§ 564.441 through 564.444 gives the licensee an opportunity for a fair hearing with the right to adduce evidence, both oral and documentary, including the right of cross-examination and other usual incidents of a trial in a court of record. The contention that these statutes are conflicting and inconsistent is denied.

We have examined all of plaintiff's claims that §§ 564.441 through 564.444 are invalid and find them to be without merit. Accordingly, the judgment is reversed and the cause is remanded with directions to enter judgment in favor of the defendant and against the plaintiff on all issues.

All concur.

SEILER, J., not participating because not a member of the Court when cause was submitted.