**JERRY–RUSSELL BLISS, INC.,**
**Petitioner-Appellant,**

v.

**HAZARDOUS WASTE MANAGEMENT COMMISSION, et al., Respondents.**

No. 67115.

Supreme Court of Missouri,
En Banc.

Dec. 17, 1985.

Rehearing Denied Jan. 15, 1986.

Clifford Schwartz, Charles M. Shaw, Clayton, for petitioner-appellant.

Honorable William L. Webster, Atty. Gen., Edward F. Downey, Asst. Atty. Gen., Jefferson City, for respondents.

HIGGINS, Chief Justice.

Jerry-Russell Bliss, Inc., appeals from denial of a license to transport hazardous waste. Petitioner asserts: denial deprived petitioner of due process of law; denial was based on an erroneous interpretation of the law and amounted to an unconstitutional retroactive application of law; the refusal of the circuit court to hear additional evidence constituted an abuse of discretion and deprived petitioner of a fair hearing; there was insufficient evidence to deny the license; and acts of a predecessor unincorporated association were erroneously attributed to petitioner.

Review of this appeal is limited to a determination whether the denial of petitioner's application for a license to transport hazardous waste by the Hazardous Waste Management Commission is supported by competent and substantial evi-

dence upon the whole record or whether it was arbitrary, capricious, unreasonable, or an abuse of discretion. *Ross v. Robb*, 662 S.W.2d 257 (Mo. banc 1983). Affirmed.

Petitioner is engaged in transporting waste oil. It was incorporated in November 1978 to continue the operation of an unincorporated family business known as Bliss Waste Oil Company, Bliss Oil Company, or Russell Bliss Drain Oil Service, all owned by Russell Bliss and his wife Evelyn.

Petitioner filed its application for a license to transport hazardous waste with the Department of Natural Resources on May 19, 1980. The Department denied the application pursuant to section 260.395.15, RSMo Supp.1980, by letter of February 13, 1981, supplemented by a second letter of November 24, 1982.

Petitioner sought review before the Commission pursuant to section 260.395.4, RSMo Supp.1980, and an adversary hearing was accorded. Testimony of 28 witnesses and 125 exhibits filled a record of over 1400 pages.

The Commission found: 1) on May 20, 1971, a truck belonging to Bliss Waste Oil Company driven by a Bliss employee, while carrying a cargo of hazardous chemical wastes, was ticketed by the Highway Patrol for being operated in an over-weight condition; 2) on May 20, 1971, the same truck and driver discharged part of its hazardous load on farm property owned by Russell Bliss, resulting in the death of chickens and wild birds; 3) on May 25, 1971, hazardous wastes, commingled with other waste products, were sprayed by Bliss Waste Oil Company on the surface of a riding arena at Shenandoah Stables, resulting in illness to at least one person and the death of numerous wild birds, several cats and dogs, one billy goat and forty-one horses; 4) on June 11, 1971, hazardous wastes, commingled with other waste products, were sprayed by Bliss Waste Oil Company on the surface of a riding arena at Bubbling Springs Ranch; 5) on June 16, 1971, hazardous wastes, commingled with other waste products, were sprayed by

Bliss Waste Oil Company on the surface of a riding arena known as Timberline Stables, resulting in the death of numerous wild birds, cats, dogs and horses; 6) on March 29, 1977, at the direction of Russell Bliss, hazardous wastes were pumped into a Bliss Waste Oil Company truck from a waste pit site located near Dittmer in Jefferson County and driven from the site in defiance of a Notice of Violation which contained instructions not to move any materials in the pit without prior approval from the Department; 7) after pumping the hazardous waste from the pit, and at the direction of Russell Bliss, nearby drums were moved into the pit and the pit was then filled and leveled with soil; 8) on April 9, 1977, at the direction of Russell Bliss, the drums previously buried were excavated and removed from the site; 9) some, if not all, of the drums, barrels and hazardous waste materials found at the Dittmer site originated from Bliss Waste Oil Company tanks located in Frontenac, Missouri; 10) the activities at the Dittmer waste site were intended to cover up, and not to clean up, the waste pit and were intended to hinder and frustrate the efforts of the Department and the federal government to investigate and remedy the hazardous condition which existed at the Dittmer site; and 11) on April 14, 1982, an employee of petitioner sprayed hazardous waste oil on a railcar switching yard in Venice, Illinois.

The Commission concluded: 1) section 260.395.15 authorizes and requires the Department to consider transactions occurring before the effective date of the statute as a basis for the denial of a license application; 2) petitioner is a continuation of the business previously conducted as Bliss Waste Oil Company, and that petitioner can be held responsible for the actions of Bliss Waste Oil Company, its principals, and its employees; 3) as a result of its activities from May 20, 1971, through June 16, 1971, petitioner engaged in hazardous waste management practices which pose or posed a threat to the health of humans or the environment; 4) petitioner further posed a

danger to the health of humans or the environment when Russell Bliss knowingly failed or refused to cooperate in the investigation of these activities; 5) that as a result of the Dittmer waste site incident, petitioner engaged in hazardous waste management practices which pose or posed a threat to the health of humans or the environment; 6) as a result of the April 14, 1982, Venice, Illinois, incident, petitioner engaged in hazardous waste management practices which pose or posed a threat to the health of humans or the environment; and 7) the April 14, 1982, Venice, Illinois, incident was in violation of 10 C.S.R. § 25–6.010(2)(B)2.C, 10 C.S.R. 25–4.020(1) and § 260.425.1, RSMo 1980. As a result of its findings and conclusions, the Commission determined that petitioner habitually engaged in waste management practices which pose a threat to the health of humans or the environment and that petitioner habitually violated the requirements of the Missouri Solid or Hazardous Waste Management Practice Acts. The Commission further determined the Department was authorized and commanded by section 260.395.15, RSMo Supp.1980, to deny a hazardous waste transporter's license to petitioner.

Petitioner complains that the lack of a pre-denial hearing deprived petitioner of protected property and liberty interests without due process of law; that because unadjudicated charges formed a basis for the denial, due process requires a pre-denial hearing to afford petitioner an opportunity to contest the alleged violations; and that the post-denial appeals and review procedures are constitutionally inadequate.

■ This due process issue is raised for the first time in petitioner's brief in this Court. Constitutional issues must be raised at the earliest opportunity and preserved. *Swafford v. Industrial Comm'n,* 452 S.W.2d 801 (Mo.1970); *Christiansen v. Fulton State Hospital,* 536 S.W.2d 159 (Mo. banc 1976); *City of Kansas City v. Narron,* 493 S.W.2d 394 (Mo.App.1973). "In this case the point should have been raised, at the very latest, in the petition for

review filed in the circuit court." *Swafford,* 452 S.W.2d at 802. Petitioner argues in its reply that its contention "only broadens" its original arguments before the circuit court. A review of the record discloses, however, that petitioner did not invoke the due process issue in any respect before its appeal to this Court. The question is therefore not for review.

■ Petitioner would challenge the correctness of a portion of the circuit court's judgment, but this Court reviews the decision of the Commission, not the judgment of the trial court. *Evangelical Retirement Homes, Inc. v. State Tax Comm'n,* 669 S.W.2d 548, 552 (Mo. banc 1984). Petitioner does contend, however: 1) the Commission erred in construing "hazardous waste management practices which pose a threat to the health of humans or the environment" to include practices engaged in before the effective date of the statute; and 2) if the Commission did not err, section 260.395.15, RSMo Supp.1980, is unconstitutionally retroactive in its operation.

Section 260.395.15 provides:

A license or permit shall not be issued to any person who is determined by the department to habitually engage in or to have habitually engaged in hazardous waste management practices which pose a threat to the health of humans or the environment or who is determined by the department to habitually violate or to have habitually violated the requirements of the Missouri solid or hazardous waste laws, the solid or hazardous waste laws of other states or federal laws pertaining to hazardous waste.... For the purposes of this subsection, the term "person" shall include any officer or management employee of the applicant. *Id.*

In construing statutes, this Court's responsibility is to ascertain the intent of the General Assembly from language used, and to give effect to that intent. *Brown Group, Inc. v. Administrative Hearing Comm'n,* 649 S.W.2d 874, 881 (Mo. banc 1983). In its construction of section 260.-395.15, the Commission relied on *Barbieri*

*v. Morris,* 315 S.W.2d 711 (Mo.1958), where this Court had to ascertain the legislative intent in the phrase "habitual violator of traffic laws" defined to be "a person who has been adjudged guilty at least four times within two years of violating any traffic laws or ordinances...." There was no qualifying phrase that the two years shall be "after the effective date" of the section, and this Court held the legislature intended to include violations occurring before the effective date. This Court concluded that a habitual traffic violator is a menace on the public highway, and he is no less a menace because some of his convictions occurred before the effective date. *Id.* at 714.

■ The language of section 260.395.15 demonstrates that the legislature intended the Commission to consider hazardous waste management practices occurring prior to the effective date of the statute. There is no qualifying phrase that waste management practices which pose a threat to the health of humans or environment shall be considered "after the effective date" of section 260.395.15. The phrase "to habitually engage in or to have habitually engaged in" evidences the intention of the legislature that the Commission act as it did. This phrase is written in the present tense, as well as the past tense. To interpret the statute to exclude pre-enactment waste management practices would be to render the past tense portion of the statute a nullity. *Eminence R–1 School Dist. v. Hodge,* 635 S.W.2d 10, 13 (Mo.1982); *Brown Group, Inc. v. Admin. Hearing Comm'n,* 649 S.W.2d at 881–882. The Commission's interpretation of the statute is consistent with the legislative intention to prevent hazardous waste mismanagement practices. The preservation of the public health is recognized to be a goal of the highest priority. *Craig v. City of Macon,* 543 S.W.2d 772 (Mo. banc 1976). One who habitually engages in hazardous waste management practices which pose a threat to the health of humans or the environment is a menace to the public health, and he is no less a menace because some of his mismanagement practices occurred before the effective date of section 260.395.-15. *See Barbieri,* 315 S.W.2d at 714.

■ Does section 260.395.15 run afoul of the proscription against retroactive application of statutes? Mo. Const., art. I, § 13 (1945). Retrospective or retroactive laws have been defined "as those which take away or impair vested rights acquired under existing laws, or create a new obligation, impose a new duty, or attach a new disability in respect to transactions or considerations already past." *Danaher v. Smith,* 666 S.W.2d 452, 455 (Mo.App.1984); *State ex rel. St. Louis-San Francisco Ry. v. Buder,* 515 S.W.2d 409, 410 (Mo. banc 1974); *Barbieri v. Morris,* 315 S.W.2d at 714; *Lucas v. Murphy,* 348 Mo. 1078, 156 S.W.2d 686, 690 (1941); *see Dept. of Soc. Serv. v. Villa Capri Homes,* 684 S.W.2d 327 (Mo. banc 1985). A statute is not retrospective or retroactive, however, because it relates to prior facts or transactions but does not change their legal effect, or because some of the requisites for its action are drawn from a time antecedent to its passage, or because it fixes the status of an entity for the purpose of its operation. *Barbieri,* 315 S.W.2d at 714; *State ex rel. Sweezer v. Green,* 360 Mo. 1249, 232 S.W.2d 897, 900 (Mo. banc 1950); *Dye v. School Dist.,* 355 Mo. 231, 195 S.W.2d 874 (banc 1946); *State ex rel. Ross v. General American Life Ins. Co.,* 336 Mo. 829, 85 S.W.2d 68 (1935); *Cox v. Hart,* 260 U.S. 427, 43 S.Ct. 154, 67 L.Ed. 332 (1935).

The statute's only relation to a time antecedent is in the provision referencing hazardous waste management practices prior to the effective date. Section 260.395.15 does not attempt to punish or adjudicate waste management practices prior to the effective date of the statute. Its purpose is not to impair vested rights, impose a new duty or attach a new disability in respect to transactions already past; its purpose is to provide a consideration for the granting or denial of a hazardous waste transporter's license. The antecedent circumstances in this case were for consideration by the

Commission in denying the license. *See Barbieri,* 315 S.W.2d at 715.

■ Petitioner has no vested rights in the issuance of a license to transport hazardous waste. *See* 53 C.J.S. Licenses, §§ 2, 42 (1948); *State v. Seebold,* 192 Mo. 720, 91 S.W. 491 (1905); *cf. Barbieri v. Morris.* Petitioner has no vested right in a "mere expectation based upon an anticipated continuance of existing law." *Fisher v. Reorganized School Dist.,* 567 S.W.2d 647 (Mo. banc 1978). The Commission's denial based, in part, on antecedent facts, did not impose any new obligations or duty, or attach a new disability in respect to transactions or considerations already past. *Barbieri,* 315 S.W.2d at 715.

■ Petitioner contends the circuit court erred in its interpretation of section 536.-140.4, RSMo 1978, and asserts the circuit court should have received additional evidence, including alleged instances of unfairness by the Commission. Petitioner adverts to the last sentence of section 536.-140.4: "The Court may in any case hear and consider evidence of alleged irregularities in procedure or of unfairness by the agency not shown in the record."

The language of section 536.140.4 is not a mandate for the trial court to consider further evidence; it is permissive only. *Eddington v. St. Francois Cty R–III Bd. of Ed.,* 564 S.W.2d 283 (Mo.App.1978); *Gore v. Wochner,* 558 S.W.2d 333, 334 (Mo. App.1977). Petitioner had its opportunity to present its evidence at the hearing.

Petitioner challenges the sufficiency of the evidence asserting that the circuit court erred in considering waste management practices occurring in 1971, prior to the enactment of the statute and therefore the incident occurring in Venice, Illinois, did not constitute "habitual" violations for which a license could be denied.

■ This contention has been considered above. The record shows substantial and competent evidence to warrant the Commission's finding that petitioner habitually engaged in hazardous waste management practices which posed a threat to the health of humans or to the environment; the Commission's findings establish no less than seven mismanagement incidents. Petitioner's additional argument that it cannot be accountable for the 1971 practices because there was no knowledge of the dangers associated with the hazardous waste is equally unavailing; section 260.395.15 imposes no scienter or state of mind requirement. There is no indication that the Commission acted unreasonably, arbitrarily or capriciously in determining its findings and reaching its conclusions.

■ Section 260.395.15 states that a license shall not be issued to any person who is determined to: 1) habitually engage in hazardous waste management practices which pose a threat to the health of humans or the environment; or 2) have habitually engaged in hazardous waste management practices which pose a threat to the health of humans or the environment; or 3) habitually violate solid or hazardous waste laws; or 4) have habitually violated solid or hazardous waste laws. Proof of any one of these is sufficient to support a denial of the license and it is thus unnecessary to discuss whether petitioner habitually violated hazardous waste laws. *See Rose v. State Bd. of Registration for Healing Arts,* 397 S.W.2d 570, 577 [11] (Mo.1965).

Petitioner contends the circuit court erred in upholding the Commission's finding that the liabilities and disabilities of Bliss Waste Oil Company, its principals and its employees are attributable to petitioner for the purpose of determining its qualifications for a hazardous waste transporter's license. The general rule is that where one corporation sells, or otherwise transfers, its assets to another corporation, and the circumstances are such that the purchasing corporation is a continuance of the selling corporation, the purchasing corporation *ipso facto* is liable for the debts and liabilities of the selling corporation. *Ingram v. Prairie Block Coal Co.,* 319 Mo. 644, 5 S.W.2d 413, 416 (1928); *Brockmann v. O'Neill,* 565 S.W.2d 796 (Mo.App.1978). This same rule appertains where a new corporation succeeds an unincorporated as-

sociation. *Citizens Mut. Fire & Lightning Ins. Soc. v. Schoen*, 105 S.W.2d 43 (Mo. App.1937); *Taylor v. American Mut. Ass'n*, 229 Mo.App. 284, 77 S.W.2d 865 (1935).

 Prior to 1978, the Bliss Waste Oil Company was owned and operated by Russell and Evelyn Bliss; their son, Jerry Bliss, was an employee of their business. When the business was incorporated in 1978 Russell, Evelyn, and Jerry Bliss, became the officers, directors and sole shareholders of petitioner. The business operations remained the same after incorporation. The office, trucks, employees and customers of petitioner are the same as those of Bliss Waste Oil Company. Petitioner represented itself to be a continuation of the Bliss Waste Oil Company, advertising on its letterhead that it had been in business for over forty years; and advertised itself as "Bliss Oil, Inc." on the side of at least one of its trucks. This was sufficient to show that petitioner was a continuation of Bliss Waste Oil Company and, as such, responsible for the actions of the latter, its principals and its employees.

Petitioner argues the Commission should not be allowed to "pierce the corporate veil" to hold petitioner accountable for the acts of Bliss Waste Oil Company, its principals and its employees. This argument has no application to the relationship between a successor corporation and its predecessor entity.

The decision of the Commission is affirmed.

BILLINGS, BLACKMAR, DONNELLY, WELLIVER, RENDLEN, JJ., and SIMON, Special Judge, concur.

ROBERTSON, J., not sitting.