Edward ALHEIM, et al., Coalition for the Environment, Missourians Against Hazardous Waste, Warren County Chapter, City of Lake Saint Louis, Appellants,

v.

F.W. MULLENDORE, et al., Hazardous Waste Management Commission, Department of Natural Resources, State of Missouri, Respondents.

No. WD 36801.

Missouri Court of Appeals, Western District.

July 1, 1986.

Modification Overruled Aug. 28, 1986.

James G. Trimble, Parkville, for appellants.

Edward F. Downey, Asst. Atty. Gen., Jefferson City, Chester A. Love, Daniel P. Card, II, St. Louis, for Bob's Home Service, Inc.

Before CLARK, C.J., and KENNEDY and LOWENSTEIN, JJ.

CLARK, Chief Judge.

This is an appeal from the order of the Missouri Hazardous Waste Management Commission which approved a decision by the Department of Natural Resources to issue a disposal facility permit to Bob's Home Services, Inc., intervenor-respondent. The appellants are two municipalities and the named individuals, who either reside or own property in the vicinity of the disposal area.

On this appeal, the municipalities and individuals contend that the permit should not have issued, and that the Commission should have recalled the permit because the waste facility was within one-fourth mile of occupied residences and the written consent of the nearby property owners as required by § 260.430.2, RSMo.Cum.Supp. 1984 [1], was not obtained. At issue also is the Commission's order which dismissed from the proceedings the Coalition For The Environment, Missourians Against Hazardous Waste and various individuals.

We first review the procedural history of the permit in question. On May 25, 1977, Bob's Home Services, Inc. applied for and was issued a permit to operate an industrial waste disposal facility under the then applicable statutes, §§ 260.200–260.245 RSMo.Cum.Supp.1975. That law, contrasted with additional supplementary legislation, was known as the Missouri Solid Waste Management Law. The permit authorized Bob's to handle solid industrial wastes within a tract of 158 acres leased for the purpose and to dispose of solid wastes, apparently by landfill, on 12 acres as specified within the larger tract. There is no question here as to the validity of the May, 1977 permit.

In the legislative session of 1977, the General Assembly enacted §§ 260.350–260.-430 RSMo.1978 known as the Missouri Hazardous Waste Management Law. The effective date was September 28, 1977, some five months after Bob's had commenced operation of its facility under the earlier permit. Pursuant to that statute, the Hazardous Waste Commission adopted rules among which was a requirement that any person operating a hazardous waste facility secure a permit from the Department of Natural Resources. Despite its earlier permit for disposal of solid industrial wastes, Bob's recognized the obligation to obtain a permit for disposal of hazardous wastes and applied in February, 1980 for the additional permit. It is this second permit issued December 22, 1982 which is at issue in the present case.

The 1982 permit differed from the 1977 permit in some respects, although the facility area remained within the original tract of 158 acres. The 1977 permit authorized disposal of solid waste within a defined 12 acre area. The 1982 permit limited the disposal site to 2.2 acres for hazardous waste within the previously permitted 12 acres where solid waste could be disposed. The 1982 permit, however, enlarged the storage, treatment and disposal area to 24 acres which included a 300 foot buffer zone mandated by § 260.430.2. Thus, under the 1982 permit, Bob's was entitled to operate its hazardous waste facility in an area of 24 acres, including the buffer zone, but could only conduct disposal operations in the 2.2 acre plot. These terms of the permits were not in dispute and are included in the findings made by the Commission.

■ Appellants assert in their first point that Bob's was disqualified from receiving the 1982 permit because they, as property owners within one-fourth mile, had not giv-

1. Except as otherwise indicated all statutory references are to RSMo.Cum.Supp.1984.

en written consent. It is to be noted that the point as stated in the briefs alleges error on the part of the circuit court in entry of its judgment affirming the Commission's decision. In cases of this nature, the appellate court reviews the findings and decisions of the agency, not the judgment of the trial court. *Fleming Foods of Missouri, Inc. v. Runyan,* 634 S.W.2d 183, 184 (Mo.banc 1982). The scope of review is provided by § 536.140, RSMo.1978. Review is limited to a determination of whether the agency's action was supported by competent and substantial evidence upon the whole record or whether it was arbitrary, capricious, unreasonable, unlawful or in excess of its jurisdiction. *Evangelical Retirement Homes, Inc. v. State Tax Commission,* 669 S.W.2d 548, 552 (Mo. banc 1984). The process is applicable to judicial review where the issue is the denial or grant of a permit by the Hazardous Waste Management Commission. *Jerry-Russell Bliss v. Hazardous Waste Management Commission,* 702 S.W.2d 77 (Mo.banc 1985). We therefore look in this case to the findings and decision by the Hazardous Waste Commission and not to the judgment of the circuit court.

The Commission found that § 260.430.2 was inapplicable to the subject permit and that no consent of appellants was required because the statute by its express terms affects only a "hazardous waste disposal facility established after September 28, 1977." The evidence showed beyond dispute that the 2.2 acres set aside for disposal of hazardous waste had been utilized for that purpose by Bob's continuously since May 25, 1977 and, therefore, the 1982 permit did not establish a disposal facility "after September 28, 1977." This conclusion by the Commission was correct.

The exception appellants take to this conclusion appears to be based on an assumption that reference in the statute to a hazardous waste disposal facility includes not only the area actually used for waste disposal, but surrounding areas used for waste storage and treatment and the buffer zone. Thus, they say, when the necessity for a buffer zone arose under the new

statute and a new permit was required, the addition of the 12 acres altered the facility and it was no longer a hazardous waste disposal tract which existed before September 28, 1977. Resolution of this question requires that we ascertain what was intended by the legislature in its use of the term "hazardous waste disposal facility" in § 260.430.2 exempting from the consent requirement those tracts used for that purpose on or before September 28, 1977.

The term, hazardous waste disposal facility, as such, is not defined in the statutes. Both "hazardous waste facility" and "disposal" however are defined, the former in § 260.360(10) and the latter in § 260.360(5):

(10) " 'Hazardous waste facility,' any property that is intended or used for hazardous waste management including, but not limited to, storage, treatment and disposal sites."

(5) " 'Disposal,' the discharge, deposit, dumping or placing of waste into or on the land as a final action."

Also worthy of mention is the definition of hazardous waste management in § 260.-360(11):

(11) " 'Hazardous waste management,' the systematic recognition and control of hazardous waste from generation to final disposition including, but not limited to, its identification, containerization, labeling, storage, collection, transfer or transportation, treatment, resource recovery or disposal."

Throughout the act, the terms hazardous waste facility and hazardous waste disposal facility are used. The latter term is employed in § 260.430.2 to describe those facilities which must have the buffer zone and which, if not established on or before September 28, 1977, require the written consents on which appellants here rely to defeat the 1982 permit. The question is whether the language of the act indicates an intent by the legislature to treat all waste facilities alike where hazardous materials are involved or whether a disposal site is in a separate class from treatment or storage sites.

■ When language used in statutes is clear and unambiguous, then its intent should be ascertained from its plain language. *State ex rel. LeNeve v. Moore*, 408 S.W.2d 47, 49 (Mo.banc 1966); *State v. Davis*, 675 S.W.2d 410, 415 (Mo.App.1984). The standard to determine whether or not the language of a statute is clear and unambiguous is whether the term is plain and clear to a person of ordinary intelligence. If so, then the term is not ambiguous and does not provide the opportunity for construction. *State ex rel. School District of Kansas City v. Young*, 519 S.W.2d 328, 330 (Mo.App.1975); *St. Louis Christian Home v. Missouri Commission on Human Rights*, 634 S.W.2d 508, 512 (Mo.App. 1982).

The definitions noted above and the context of the entire act demonstrate that a hazardous waste facility is a property on which one or more hazardous waste handling and disposition activities may be conducted. This conclusion is drawn from the language of § 260.360(10) in particular. A hazardous waste facility is there defined as a property used for storage, treatment and disposal, indicating that at least three activities may be conducted on such a site. From the definition of hazardous waste management in § 260.360(11), a property is within the purview of the Hazardous Waste Management Law generally if hazardous waste is handled, even though the activity be only storage, or only treatment or only disposal. In contrast with the scope of activity which characterizes a hazardous waste facility, however, a hazardous waste disposal facility must involve the actual disposal of waste, that is, the final action defined in § 260.360(5). A site used only for storage or treatment of hazardous waste is a hazardous waste facility but it is not a hazardous waste disposal facility. The latter term indicates a sub-class of facilities identified by the particular use.

■ Applied to the present case, the distinction in terms as used in the statute requires the conclusion that the consent of appellants who owned property within the boundary area was required only if Bob's sought to conduct the disposal of hazardous waste outside the area for which it had obtained the 1977 permit. The evidence was conclusive that it did not and that the 1982 permit more severely limited the site for disposal to a smaller portion of the tract covered by the original permit. The buffer zone of an additional 12 acres was not to be used for disposal. Even if used for storage and treatment, no consent by appellants was required because the condition of obtaining consent is imposed only on disposal sites. Bob's was entitled to receive the 1982 permit without procuring consents from appellants and the Commission was correct in affirming the decision by the Department of Natural Resources to issue it.

■ In the other point presented, appellants argue that the Commission erred in the dismissal of various plaintiffs in the original cause. The point suggests that the dismissal based on the failure of the parties to appear and offer evidence did not constitute a ground to find that the dismissed parties lacked any interests affected by a decision on the permit issue.

Appellants concede that a ruling on the dismissal question would not be determinative of their claim presented on this appeal, but they argue that a ruling should be made because the action by the Commission establishes a harmful precedent and should not be allowed to stand. The dismissal parties themselves did not appeal the order by the Commission and they are not parties here.

Appellants lack standing to raise the question of the dismissal. Standing is the interest of an adversary in the subject of the suit as an antecedent to the right to relief. *State ex rel. Schneider v. Stewart*, 575 S.W.2d 904, 909 (Mo.App.1978). The doctrine which prohibits courts from rendering advisory opinions is interrelated to the concept of standing. Courts are required to dispose of only those issues which affect the rights of the parties to the case. If the resolution of an issue has no affect on the rights of the parties, then standing to raise the issue is lacking. *State ex rel.*

*Williams v. Marsh,* 626 S.W.2d 223, 227 (Mo. banc 1982). An opinion on an issue which the party does not have standing to raise is necessarily relegated to the class of advisory opinions.

Appellants here are, by their own admission, seeking only an advisory opinion on the dismissal of those parties no longer in the case. We are precluded from considering the point.

The decision by the Hazardous Waste Management Commission is affirmed.

All concur.