**William WARREN and Minnie Warren, Appellants,**

v.

**DEPARTMENT OF NATURAL RESOURCES, STATE OF MISSOURI, Respondent.**

No. 15063.

Missouri Court of Appeals,
Southern District,
Division One.

Oct. 2, 1987.

Motion for Rehearing or Transfer to Supreme Court Denied Oct. 23, 1987.

Application to Transfer Denied Dec. 15, 1987.

L. Dwayne Hackworth, Hackworth and Schuller, Piedmont, for appellants.

William L. Webster, Atty. Gen., Thomas P. Wilson, Asst. Atty. Gen., Jefferson City, for respondent.

CROW, Chief Judge.

William Warren and Minnie Warren ("appellants"), pursuant to permits issued by the Department of Natural Resources ("the Department"), § 260.205,[1] began operating a solid waste disposal area, § 260.200(6), in Reynolds County in 1978.

In 1985, the Department revoked the permits because of alleged violations of the Missouri "Solid Waste Disposal Law," §§ 260.200–.245, and regulations promulgated by the Department thereunder. Appellants thereupon requested a hearing per § 260.235, and one was conducted by a "Hearing Officer" designated by the Director of the Department. On February 10, 1986, the Hearing Officer filed comprehensive "Findings of Fact, Conclusions of Law and Order," upholding the revocation of appellants' permits.

Appellants timely filed a petition for judicial review in the Circuit Court of Reynolds County. §§ 260.235, 536.100–.140. On January 14, 1987, that court entered judgment affirming the decision of the Department. This appeal followed.

Appellants' sole assignment of error avers:

"The trial court erred in affirming the [Department's] decision ... in that the

1. References beginning with "§" are to RSMo 1978.

[Department's] evidence of alleged violations, consisting of inspection reports and photographs, failed to show that the alleged violations were either not corrected in the normal course of daily operating procedure or that they existed at the close of any given operating day. The failure to provide such evidence leaves the trial court's decision based on conjecture and thus there was not substantial and competent evidence to support the decision."

The scope of our review is established by § 536.140. Pertinent to appellants' assignment of error, that section provides:

"2. The [court's] inquiry may extend to a determination of whether the action of the agency

. . . .

(3) Is unsupported by competent and substantial evidence upon the whole record;

. . ."

As explained in *Evangelical Retirement Homes of Greater St. Louis, Inc. v. State Tax Commission*, 669 S.W.2d 548, 552[1–3] (Mo. banc 1984):

"The reviewing court reviews the findings and decision of the administrative agency and not the judgment of the circuit court .... the attention of the appellate court sitting in review is properly focused on the validity of the agency's order, under the appropriate standard of review, rather than on the standard which the circuit court chose to employ."

*Accord: Jerry–Russell Bliss, Inc. v. Hazardous Waste Management Commission*, 702 S.W.2d 77, 80[2] (Mo. banc 1985); *Alheim v. Mullendore*, 714 S.W.2d 173, 174–75[1] (Mo.App.1986).

Accordingly, given the thrust of appellants' assignment of error, our task is to determine whether the Department's final decision is supported by competent and substantial evidence upon the whole record.

An "environmental engineer" employed by the Department, testifying before the Hearing Officer, described appellants' facility as a "trench method of sanitary landfill" for the disposal of "solid waste." [2] Explaining how such a facility should be operated, the engineer said: "The operation consists of a series of trenches excavated in the ground. The waste is deposited in the trenches and covered daily. The trench is brought back to ground level and is covered with two feet of final covered material, and then the area is generally seeded with established vegetation to control erosion and preventing erosion of it."

The Hearing Officer found that on 19 separate occasions from February 22, 1979, until the revocation of appellants' permits in 1985, Department personnel found violations during inspections at appellants' landfill. Appellants challenge the Hearing Officer's findings in regard to only one inspection, April 25, 1984. In this opinion, we shall disregard that inspection, as the remaining 18 inspections revealed a multitude of violations.

The violations found by the Hearing Officer, together with the dates thereof, included the following.

Lack of daily cover.[3] Feb. 22, 1979; Jan. 17, 1980; Aug. 28, 1980; Jan. 8, 1981; Mar. 12, 1981; July 1, 1981; Aug. 18, 1981; July 9, 1982; Sept. 20, 1982; Nov. 1, 1982; Dec. 6, 1982; Dec. 30, 1982; July 24, 1984; Sept. 17, 1984; Sept. 27, 1984; Nov. 19, 1984.

Surface water in contact with waste.[4] Feb. 22, 1979; Jan. 17, 1980; Sept. 17, 1984; Sept. 27, 1984.

**2.** Section 260.200(5) states: "'Solid waste' means garbage, refuse and other discarded materials including, but not limited to, solid and semisolid waste materials resulting from industrial, commercial, agricultural, governmental and domestic activities, but does not include overburden, rock, tailings, matte, slag or other waste material resulting from mining, milling or smelting[.]"

**3.** 10 CSR 80–3.010(11)(C)1 states: "Daily cover shall be applied regardless of weather.... The

thickness of the compacted daily cover shall not be less than six inches. Sanitary landfills operating twenty-four hours per day shall incorporate all solid waste into one or more cells at least every twenty-four hours."

**4.** 10 CSR 80–3.010(6)(C)3 states: "Ground or surface water shall not be allowed to come in contact with solid wastes so as to impair the water's use."

Lack of all-weather access road.[5] Jan. 17, 1980; July 24, 1984; Sept. 17, 1984; Sept. 27, 1984; Nov. 19, 1984.

Lack of adequate drainage and diversion of surface water runoff.[6] Jan. 17, 1980; Sept. 17, 1984; Sept. 27, 1984; Nov. 19, 1984.

Salvaged materials improperly stored.[7] Jan. 17, 1980; Aug. 28, 1980; Nov. 1, 1982; July 24, 1984; Sept. 17, 1984; Sept. 27, 1984.

Failure to compact waste to smallest practicable volume.[8] Feb. 22, 1979; Jan. 17, 1980; Aug. 18, 1981; Sept. 20, 1982; Dec. 30, 1982; Sept. 17, 1984; Sept. 27, 1984.

Lack of intermediate cover.[9] Aug. 28, 1980; July 9, 1982; Nov. 1, 1982; Nov. 19, 1984.

Lack of final cover.[10] Aug. 28, 1980; November 1, 1982.

Lack of adequate equipment.[11] Aug. 28, 1980; Aug. 18, 1981; Dec. 6, 1982; Dec. 30, 1982; Sept. 17, 1984; Sept. 27, 1984.

Failure to operate in accordance with approved engineering plans.[12] Mar. 26, 1981; May 7, 1981; Nov. 1, 1982.

Leachate[13] formation or discharge.[14] July 1, 1981; Aug. 18, 1981; July 9, 1982; Nov. 1, 1982; Dec. 6, 1982.

Scattered litter.[15] July 1, 1981; July 24, 1984; Sept. 17, 1984; Sept. 27, 1984.

The Hearing Officer further found that on September 15, 1981, and again on February 15, 1983, the Department had issued an "abatement order" to appellants. The 1981

**5.** 10 CSR 80–3.010(4)(C)1 states: "The site shall be accessible to vehicles which the site is designed to serve by all-weather roads leading from the public road system...."

**6.** 10 CSR 80–3.010(6)(C)1 states: "Surface water courses and runoff shall be diverted from the sanitary landfill (especially from the working face) by devices such as trenches, conduits, and proper grading. The sanitary landfill shall be constructed and graded so as to promote rapid surface water runoff without excessive erosion...."

**7.** 10 CSR 80–3.010(10)(C)4 states: "... Salvaged materials shall be removed from the sanitary landfill daily or stored in aesthetically acceptable containers or enclosures."

**8.** 10 CSR 80–3.010(12)(A) states: "... In order to conserve sanitary landfill site capacity, thereby preserving land resources, and to minimize moisture infiltration and settlement, solid waste and cover material shall be compacted to the smallest practicable volume."

**9.** 10 CSR 80–3.010(11)(C)2 states: "Intermediate cover shall be applied on areas where additional cells are not to be constructed for extended periods (over sixty days) of time. The thickness of the compacted intermediate cover shall not be less than one foot."

**10.** 10 CSR 80–3.010(11)(C)3 states: "Final cover shall be applied on each area as it is completed. The thickness of the compacted final cover shall not be less than two feet."

**11.** 10 CSR 80–3.010(12)(C) states:
"1. Solid waste handling equipment shall, on any operating day be capable of performing and shall perform the following functions on a slope not flatter than one (vertical) to three (horizontal):
A. spread the solid wastes accepted in layers no more than two feet thick, while confining it to the smallest practicable area;
B. compact the spread solid wastes to the smallest practicable volume; and
C. place, spread, and compact the cover material as much as practicable.
2. A preventive maintenance program should be employed to maintain equipment in operating order.
..."

**12.** 10 CSR 80–3.010(3)(C)1 states: "The disposal of waste ... shall be conducted in accordance with approved design and operating plans plus any additional procedures determined by the department as necessary to protect the water, air and land resources and to provide for safety of the operators and waste haulers."

**13.** 10 CSR 80–2.010(15) states: "Leachate means liquid that has percolated through solid waste and has extracted dissolved or suspended materials from it."

**14.** 10 CSR 80–3.010(6)(C)2 states: "Leachate collection and treatment systems are to be used where necessary to protect ground and surface water resources. This shall apply for as long a period as necessary during and following the active operation."

**15.** 10 CSR 80–3.010(10)(C) states:
"1. Portable litter fences or other devices shall be used in the immediate vicinity of the working face and at other appropriate locations to control blowing litter....
2. Wastes that are easily moved by wind shall be covered, as necessary, to prevent their becoming airborne and scattered."

order commanded appellants to spread and compact all exposed waste on a daily basis, to apply six inches of soil cover on a daily basis to all exposed waste, to establish vegetative cover to combat erosion on completed areas of the landfill, to acquire and maintain proper equipment for the daily operation of the landfill, and to control leachate at the landfill. The 1983 order commanded appellants to confine waste to the smallest practicable area, to operate using the trench method, to apply daily and intermediate cover, to acquire adequate equipment, to control leachate outbreaks, to collect and control scattered litter, and to restrict access to the site during unattended periods.

It is evident from the list of violations discovered during inspections that several types of violations enumerated in the abatement orders continued to occur after the orders were issued.

The gist of appellants' position in this appeal appears in this excerpt from the argument in their brief:

"... while the exhibits and testimony offered by [the Department] do indeed show violations at the time of the inspections, any landfill in the State would have leachate[,] exposed waste and other violations visible during the normal operating day. The [Department] has failed to show that, prior to the permit revocation, any violation existed at the close of any operating day. The failure to provide such evidence leads the [Hearing Officer] to base [the] decision solely on conjecture, which will not support and is fatal to the decision."

The first flaw in appellants' premise is its assumption that a landfill operator can violate the Department's regulations with impunity during the day, so long as no violation is occurring at the close of the day's operations. Appellants cite no authority for that thesis, and nothing in the regulations lends it any support.

Section 260.205.4 provides:

"Permits granted by the department ... shall be subject to revocation whenever the department determines that the ... solid waste disposal area is, or has been conducted in violation of sections 260.200 to 260.245 or the rules or regulations adopted pursuant to sections 260.-200 to 260.245...."

Nothing in that statute suggests that it applies only to violations existing at the close of daily operations. Any violation, irrespective of when it begins or ends, subjects the operator to the risk of permit revocation.

We also point out to appellants that the Department's evidence showed that on some occasions when exposed waste was observed, it was in areas which had been previously filled to capacity and were no longer being used for waste disposal. Consequently, it is no answer to those violations to argue that they could have been rectified by covering the waste before the day's end.

Furthermore, many violations were of a nature that would have obviously caused adverse consequences at the time of their occurrence, be it during the day or at the day's end, i.e., lack of an all-weather access road, lack of adequate drainage and diversion of surface water runoff, and leachate formation or discharge.

We hold that the Department's final decision is supported by competent and substantial evidence upon the whole record. Accordingly, the judgment of the circuit court upholding the Department's decision is affirmed.

GREENE, P.J., and HOLSTEIN, J., concur.